**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, AND AVNET, INC., <br><br> Defendants. | Civil Action No. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Yangtze Memory Technologies Company, Ltd. ("YMTC" or "Plaintiff"), by and through its attorneys, demands a trial by jury on all issues so triable, and for its complaint against Micron Technology, Inc. ("Micron Technology"), Micron Semiconductor Products, Inc. ("Micron Semiconductor" or "MSPI"), Micron Technology Texas, LLC ("Micron Texas") (collectively, "Micron" or "Micron Defendants"), and Avnet, Inc. ("Avnet") (collectively, "Defendants"), on information and belief, alleges as follows:

## NATURE OF THE ACTION

1. This is an action brought by YMTC against Micron and its agent Avnet for infringement of United States Patent Nos. 10,707,851, 11,233,066, 12,068,250, 12,075,621 12,094,767, 12,254,925, 12,266,403, and 12,232,313 (collectively, the "Asserted Patents").

2. Micron is one of YMTC's primary competitors in the NAND memory space. For many years, Micron has lagged behind YMTC in innovation and product performance. As a result, Micron, and by extension its agent Avnet, has engaged in widespread and unauthorized use of

YMTC's patented innovations to try to catch up with YMTC.  In doing so, neither Micron nor Avnet has paid to use YMTC's patented innovations, harming YMTC and undermining the incentive to innovate.  This action seeks to redress these wrongs.

## THE PARTIES

3.    Founded in 2016, YMTC is a leading developer and manufacturer of advanced storage technologies headquartered in and maintains a principal place of business at No. 88 Weilai 3rd Road, East Lake High-tech Development Zone, Wuhan, Hubei, China.

4.    YMTC focuses on the design and manufacturing of 3D NAND flash memory and is a professional advanced memory solutions provider recognized by global customers.  YMTC's products and solutions range from 3D NAND flash memory wafers and packaged chips to embedded memory solutions and consumer and enterprise SSDs, which are widely used in mobile devices, consumer electronics, computers, servers, and data centers.  While YMTC is well-known as a top 3D NAND flash memory chipmaker, YMTC has also innovated in dynamic random-access memory ("DRAM") for use in high density, high bandwidth applications.

5.    Micron Technology is a publicly traded corporation organized under the laws of the State of Delaware.  On information and belief, Micron Technology has a regular and established place of business at 805 Central Expressway South, Suite 100, Allen, Texas 75013 and/or 950 West Bethany Drive, Suite 120, Allen, Texas 75013.  Micron Technology is registered to do business in the State of Texas, and can be served through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.    Defendant Micron Semiconductor is incorporated under the laws of the State of Idaho.  On information and belief, Micron Semiconductor has a regular and established place of business at 805 Central Expressway South, Suite 100, Allen, Texas 75013 and/or 950 West Bethany Drive, Suite 120, Allen, Texas 75013. Micron Semiconductor has been registered to conduct

business in Texas and can be served through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

7.     Defendant Micron Texas is incorporated under the laws of the State of Idaho.  On information and belief, Micron Texas has conducted business in Texas and has a regular and established place of business at 805 Central Expressway South, Suite 100, Allen, Texas 75013 and/or 950 West Bethany Drive, Suite 120, Allen, Texas 75013.

8.     On information and belief, Micron Semiconductor and Micron Texas are wholly owned subsidiaries of Micron Technology and under the complete control of Micron Technology. All three Micron Defendants are listed as "Micron entities" at Defendants' website.  Ex. 31.[1] Micron Technology does not separately report revenue from Micron Semiconductor or Micron Texas in its filings to the Securities Exchange Commission, but rather reports combined revenue from its various products and subsidiaries.

9.     Avnet, Inc. is a corporation organized and existing under the laws of the State of New York.  Avnet is an "Authorized Micron distributor" that is part of Micron's "Sales Network" that is meant to make purchasing Micron NAND flash and DRAM memory products "[e]asy" for Micron's end customers.  Ex. 32.[2]

10.     Avnet has a regular and established place of business in this judicial District at 3101 E. President George Bush Highway, Suite 250, Richardson, TX 75082.  On information and belief, Avnet has other regular and established places of business in this judicial District at 7950 Legacy

---

[1]     https://www.micron.com/Privacy/micron-entities?srsltid=AfmBOop_dK5yl-DhvgzwkNH0PlTka7gyAaB2FjbhSxdt3v7GEEBDRcRz.

[2]     https://www.micron.com/sales-support/sales-network/authorized-distributors?srsltid=AfmBOop15amQ-K6AHYk0GS8KEkgHt78Gl0jLtxiXP5ZZ5wELPRDCW1f0#accordion-a838373bb9-item-4643dca2ac.

Drive, Plano, Texas 75024, 2801 Telecom Parkway, Richardson, Texas 75082, and 4001 E. Plano Parkway, Plano, Texas 75074.

11.     Avnet is registered to conduct business in the State of Texas.  On information and belief, Avnet can be served through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218.

12.     On information and belief, Micron makes NAND Flash, DRAM, products incorporating NAND Flash and/or DRAM, and other memory products in China, India, Japan, Malaysia, Singapore, Taiwan, and the United States.

13.     On information and belief, Defendants are making, using, selling, offering for sale, or otherwise distributing the Accused Products (as defined below) in this judicial District and elsewhere in the United States.

14.     On information and belief, Defendants have been and are acting in concert, and are otherwise liable jointly, severally, or otherwise for relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, selling, offering for sale, or otherwise distributing the Accused Products in this judicial District and elsewhere.

## JURISDICTION AND VENUE

15.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, and 1338(a).

16.     Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and the Texas Long Arm Statute.

17.     This Court has personal jurisdiction over each of Defendants at least because, through Defendants' own acts and/or through its agents, they (i) have a presence or regular and

established place of business in the State of Texas and this judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this judicial District; (iii) have done and are doing substantial business in the State of Texas and this judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this judicial District; (iv) have sufficient minimum contacts and/or maintain continuous and systematic contacts in the State of Texas and this judicial District; and/or (v) use, market, offer for sale, sell, import, and/or distribute products throughout the United States, including within the State of Texas and the Eastern District of Texas, that infringe one or more claims of the Asserted Patents.

18.    On information and belief, Defendants place, have placed, and contributed to placing the Accused Products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in this judicial District. On information and belief, Defendants have also derived substantial revenues from infringing acts in this judicial District, including from the sale and use of the Accused Products.

19.    Defendants maintain highly interactive and commercial websites, accessible to residents of this judicial District and the State of Texas, through which they promote and facilitate sales and use of their products and services, including products that infringe the Asserted Patents. Ex. 33 (Micron, https://www.micron.com); Ex. 34 (Avnet, https://www.avnet.com/americas/).  For example, Micron advertises and markets its 3D-NAND memory products at its websites, including identifying the applications for which they can be used, along with specifications for these products.  *E.g.* Ex. 35; Ex. 38  Micron specifically intends for its customers and end-users to use

the Accused Products in such applications and provides instructions and encouragement for its customers and end-users to do so.  *See* Ex. 9 (Micron 2024 Form 10K) at 10 ("We seek to build collaborative relationships with our customers . . . .").  Similarly, Avnet advertises and markets Micron's 3D-NAND and DRAM memory products at its website.  *E.g.* Ex. 36.

20.    Venue is proper in this judicial District as to Micron Defendants pursuant to 28 U.S.C. §§ 1391 and 1400(b), because, on information and belief, Micron Defendants independently and jointly have a regular and established place of business in this judicial District, including at least at 805 Central Expressway South, Suite 100, Allen, Texas 75013, and have committed and continue to commit acts of patent infringement in this judicial District, by, among other things, directly and/or indirectly making, using, selling, offering to sell, or importing products that practice (or are made in a manner that practices) one or more claims of the Asserted Patents.  *See, e.g.*, Ex. 37 (identifying Micron's office located at 805 Central Expressway South, Suite 100, Allen, TX 75013).

21.    On information and belief, Micron has another regular and established place of business in this judicial District at 950 West Bethany Drive, Suite 120, Allen, Texas 75013.  Ex. 10 (micron-iso-9001-certificate.pdf).  As shown by excerpts below, Micron's ISO 9001 Certificate, which Micron Technology lists on its website and states it (1) is a quality certification confirming "that Micron has a quality management system to ensure customer satisfaction and continual improvement," and (2) is valid from July 31, 2024 through October 10, 2025, and (3) identifies Micron's Bethany Drive as associated with Micron "organizational units/sites," including defendant Micron Texas, and the "Design of semiconductor products."  *Id*. at 4, 7 (emphasis added).



**CERTIFICATE**

This is to certify that

**Micron®**

**Micron Technology Inc.**

8000 S. Federal Way - Boise, ID 83707-006, United States of America

with the organizational units/sites as listed in the annex

has implemented and maintains a **Quality Management System**.

Scope:
Micron's semiconductor business – including the design, manufacturing, testing, support, and sale of semiconductor products.

Through an audit, documented in a report, it was verified that the management system fulfills the requirements of the following standard:

**ISO 9001 : 2015**

| | |
|---|---|
| Certificate registration no. | 30710000 QM15 |
| Valid from | 2024-07-31 |
| Valid until | 2025-10-10 |
| Date of certification | 2024-07-31 |





Deutsche
Akkreditierungsstelle
D-ZM-16074-01-00

**30710023**
**Micron Technology Texas, LLC.**
**950 West Bethany Drive, Suite 120,**
**Allen, TX 75013,**
**United States of America**

Design of semiconductor products.

22.     On information and belief, the lease for Micron's Bethany Drive location is set to expire in September 2031.  On information and belief, Micron has other regular and established places of business in the State of Texas, including at least offices at 1500 N. Greenville Avenue, Richardson, TX 75081, and a data center and lab space at 1950 North Stemmons Freeway, Suite 3050, Dallas, Texas 75207.

23.     On information and belief, Micron has multiple employees involved in the design, development and sales of NAND and DRAM products, including the Accused Products, in the State of Texas, including in this judicial District in the towns of Richardson, Allen, and Plano, Texas. Ex. 11 (LinkedIn profiles for Alex Tan, Andrew White, Craig Jones, Ming-Bo Liu, Mingye-Yan). For example, at least two of these Micron employees, Mr. Tan and Mr. Chen, have been found to have relevant information related to Micron's 3D NAND products. *BeSang, Inc. v. Micron Tech., Inc.*, 2025 WL 1942402, at *4 (E.D. Tex. July 15, 2025). In addition, as another example, other local Micron employees, including at least Joo-Sang Lee, have been found to have relevant information related to Micron's DRAM products. *Id.* at *4-*5.

24.     Venue is also proper for Avnet because it maintains regular and established places of business in this judicial district at: (1) 3101 E. President George Bush Highway, Suite 250, Richardson, TX 75082, (2) 7950 Legacy Drive, Plano, Texas 75024, (3) 2801 Telecom Parkway, Richardson, Texas 75082, and (4) 4001 E. Plano Parkway, Plano, Texas 75074. Avnet has committed acts of infringement in this judicial District. On information and belief, Avnet offers for sale and distributes products in the State of Texas and this judicial District, including the Accused Products supplied by Micron.

25.     On information and belief, Avnet's website has 1-800 contact numbers for "General Sales Support" and "Support with Online Quotes and Orders," numbers that customers and prospective customers can call to purchase, obtain a quote, or get more information about, among other products, the Accused Products. Ex. 12.[3] Avnet's website also specifically targets customers in Texas, including those in this judicial District, by providing region-specific email contact, including dallas@avnet.com, austin@avnet.com, and houston@avnet.com.

---

[3]     https://www.avnet.com/americas/about-avnet/contact/.

26.    Micron and Avnet are deeply intertwined.  Since 1985, Micron holds out Avnet as an official distributor for, and agent of, Micron.  *See* Ex. 13.[4]  Indeed, on information and belief, Micron is a key supplier for Avnet, and sales of Micron products represent a significant portion of Avnet's total annual sales.  Avnet's website provides detailed information regarding Micron's products, access to Micron authorized technical briefs and other documents, and offers to sell over one thousand Micron memory products, Ex. 14:[5]



---

[4]    https://www.eetimes.com/avnet-electronics-marketing-americas-celebrates-30-year-anniversary-with-micron-technology/.

[5]    https://my.avnet.com/silica/manufacturers/m/micron/.

27.     Micron holds out Avnet and its locations in this District as an agent performing at least Micron's sales, distribution, marketing, product development, and supply chain management in this District.  For example, Micron's website identifies Avnet as an authorized distributor in the "Americas" market, including this District.  Ex. 15.[6]  Micron informs customers and the world that "Avnet provides [Micron] with a powerful combination of demand creation focus, technical resources investment with supporting design capabilities in solution development for amongst [Micron's] customers."  Ex. 16.[7]  In fact, Micron enables Avnet to hold itself to the public as a Micron agent "ready to guide [customers] through [their] industrial design" using Micron's memory products.  Ex. 36.[8]  Avnet also conducts inventory management of Micron products and engages in pricing analysis of Micron memory products, including the Accused Products.  Ex. 17.[9]

28.     Micron controls Avnet, in part, through a distribution agreement. Ex. 13.  On information and belief, Micron's distribution agreement places controls and limitations on Avnet regarding Avnet's activities in this District involving sales, marketing, and development of Micron products.  On information and belief, the agreement requires significant coordination between Micron and Avnet that allows Micron to hold out Avnet as conducting Micron business in this District.

---

[6]     https://www.micron.com/sales-support/sales-network/authorized-distributors#accordion-a838373bb9-item-4643dca2ac.

[7]     https://www.media-outreach.com/news/singapore/2017/06/07/3486/avnet-inc-honored-with-three-awards-from-micron-technology-for-best-in-class-technical-and-business-performance/.

[8]     https://www.avnet.com/americas/products/cp/industrial-2023/micron/.

[9]     https://www.avnet.com/americas/solutions/supply-chain-services/inventory-management-and-warehousing/.

29.    Micron coordinates closely with its agent Avnet by providing Avnet access to certain Micron confidential technology and know-how not available to the public.  Indeed, Avnet's own website confirms that Avnet has access to confidential technical information that Micron labels as "Micron confidential and proprietary."  Ex. 18.[10]

30.    Avnet employees are trained with Micron technical and marketing materials, including instructing Avnet employees to understand confidential design techniques required to leverage Micron's memory technologies for Micron's customers, such as incorporating Micron's memory products into customers' end products.  *E.g. id*.  Avnet also offers technical support on behalf of Micron through its website to customers of Micron's memory products, including the Accused Products.  *See, e.g.*, Ex. 19 (Avnet website listing Avnet Silica contact and contact for general questions in support of Micron's products).[11]  This allows Avnet employees to act on behalf of Micron and provide technical and design expertise to Micron customers.  On information and belief, Micron exercises control over those Avnet employees to ensure that they are able to provide such services to Micron customers in a reliable and accurate way.

31.    Micron also provides confidential product roadmaps and pricing information to Avnet not available to the public, which allows, among other things, Avnet to negotiate with, and market to, Micron customers on behalf of Micron. Indeed, Micron shares details of its manufacturing, inventory, technical analysis, and support information with Avnet, enabling Avnet to represent Micron to customers as if it were Micron, providing Micron and Avnet's customers

---

[10]    https://www.avnet.com/opasdata/d120001/medias/docus/135/MIC4-MIC_31991-PCN.doc; https://www.avnet.com/opasdata/d120001/medias/docus/135/MIC4-PCN_31901-PCN.pdf ; https://www.avnet.com/opasdata/d120001/medias/docus/136/MIC4-MIC_32012-EOL.doc; https://www.avnet.com/opasdata/d120001/medias/docus/135/$v2/MIC4-31973-PCN.doc.

[11]    https://my.avnet.com/silica/products/product-highlights/2020/micron-storage-solutions/.

with technical assistance, design files including CAD drawings of the Micron memory products, inventory forecast, including "factory lead time" for Micron's manufacturing of the Accused Products, pricing, and after-sale support—directly through Avnet. *See, e.g.,* Ex. 20 (Avnet Americas website listing Micron memory products, their "Avnet Manufacturer Part #," "Factory Lead Time," "price," "Free CAD Models," operating temperature information, interfaces, write speed, and other information). On information and belief, Micron also controls and instructs Avnet's marketing and promotion of Micron products, controlling Avnet employees to generate demand by promoting Micron's products and offering educational support and content. On information and belief, Micron's day-to-day control and step-by-step training of Avnet—along with its detailed technical support and analysis and real-time information sharing with Avnet— enable Micron to represent Avnet to customers as if Avnet were part of Micron. *Id.*

32.    Further, Micron and Avent collectively advertise, promote, and publicize about Micron memory products, including the Accused Products, as one company. *See, e.g.*, Ex. 21 (Avnet's social media posts about Micron and Micron products).

33.    In addition to selling, offering for sale, and distributing the Accused Products as Micron's authorized distributor, "Avnet and Micron also work cooperatively to train engineers on design techniques to leverage next-generation memory technologies." Ex. 13. In so training Micron's customers' engineers, Avnet works on behalf of Micron as a Micron agent to help bolster Micron's sales and support chain, including in this judicial District. Indeed, according to "Micron and Avent," Avnet actively facilitates customer collaboration, support, and quality at every stage of Micron's product lifecycle, including during development of Micron's products:

> Micron Technology is the only company that manufactures today's major memory and storage technologies: DRAM, NAND, NOR, and 3D XPoint memory. For nearly 50 years, Micron has partnered with Avnet, a global electronic components distributor with extensive design, product, marketing, and supply chain expertise.

Avnet facilitates customer collaboration, support, and quality at every stage of the product lifecycle—whether a product is still in the conceptual stage, already in production, or at any point in between. . . .  Ex. 22 at 9.[12]

34.    As a result of this continued agency relationship, Micron works with and controls Avnet employees to jointly develop product guides intended to sell Micron products.  On behalf of Micron, Avnet publishes the "Essential Guide to Micron DDR5" memory, holding itself out as Micron's agent for selling and marketing Micron products, including in this judicial District.  *Id*.

35.    Micron has made Avnet part of its demand creation and supply chain, using Avnet to provide lifecycle support for Micron customers to incorporate products, including field engineering support with instructions to end customers.  *See, e.g.*, Ex. 23 at 2 (Avnet's support for Micron's Product Longevity Program); Ex. 24 (Avnet's advertisement of Micron PLP project).[13] In doing so, Micron holds out to the public that Avnet employees will provide Micron support for Micron products.  On information and belief, Avnet has technical and sales employees dedicated entirely to the marketing, offering for sale, sale, and distribution of only Micron memory products, including the Accused Products, in the United States and within this judicial District.

36.    Micron and Avnet are so deeply intertwined, that Micron has awarded its authorized distributor and agent, Avnet, multiple awards over the years, including "#1 Demand Creation

---

[12]   https://my.stage.avnet.com/wcm/connect/f56c724b-a7af-4bad-9e7b-d71c4bc6d07a/guide-to-micron-ddr5.pdf?MOD=AJPERES&CVID=nmg9jyC&attachment=false&id=1604432657280.

[13]   https://investors.micron.com/news-releases/news-release-details/micron-introduces-product-longevity-program-long-lifecycle; https://www.avnet.com/americas/products/cp/micron-legacy-products/.

Distributor," "#1 Design-in Distributor," and "Best Demand Creation Distributor for Micron in EMEA." *See* Ex. 25 at 1; Ex. 26 at 2.[14]

## YMTC'S INNOVATIONS AND ASSERTED PATENTS

### A.    Background of YMTC

37.    Semiconductor memories are widely used in various electronic devices such as cellular phones, digital cameras, personal digital assistants, medical electronic devices, and mobile computing devices and non-mobile computing devices.  A nonvolatile memory allows information to be stored and retained.  Examples of nonvolatile memory include flash memory (e.g., NAND type and NOR type flash memory) and electrically erasable programmable read only memory (Electrically Erasable Programmable Read-Only Memory, EEPROM).

38.    3D NAND flash memory is vital technology for many of the digital products that consumers have come to depend upon and enjoy, such as smartphones, laptops, and tablet computers, as well as for the data centers and enterprise storage solutions in which 3D NAND is used.  Innovation in the NAND memory space inures to the benefit of consumers, as innovation leads to better products at better prices.

39.    YMTC is one of the world's most innovative developers and manufacturers of 3D NAND flash memory chips.  YMTC has developed and patented technologies that enable the production of better flash memory chips, having more capacity and a lower per-bit cost.

40.    YMTC has received recognition for its innovations.  For example, in 2018, after YMTC debuted its groundbreaking Xtacking architecture of 3D NAND, YMTC received the award for the Most Innovative Flash Memory Start-up Company from the Flash Memory Summit,

---

[14]    https://my.avnet.com/silica/about-us/about-avnet-silica/news/avnet-silica-awards/micron-award-fy20/; https://www.overcomm.it/en/avnet-silica-named-micron-technologys-best-emea-demand-creation-distributor-in-dual-award-win/.

which award "recognizes the most creative and ambitious startup companies and applauds their entrepreneurial journey to becoming a market disruptor and champion of the storage industry." Ex. 27 at 4.[15]

41.    Since then, YMTC has continued to innovate.  In 2019, YMTC's Gen2 3D NAND Flash memory with innovative YMTC Xtacking® architecture was officially put into mass production.  In April 2020, YMTC launched two Gen3 Flash memory chips, which achieved the highest bit density, highest I/O speed, and highest capacity among all released Flash memory parts in the industry at that time.

42.    In 2022, YMTC received the award for "Most Innovative Memory Technology" for YMTC's Xtacking® 3.0 3D NAND Architecture from the Flash Memory Summit.  Ex. 28 at 1.[16] And most recently, in 2025, YMTC received the award for "Most Innovative Technology" in 3D NAND Flash Memory for its Xtacking® 4.0 3D NAND Architecture from the Future of Memory and Storage.  Ex. 29 at 2.[17]

43.    Over the years, YMTC has become a key player in the global 3D NAND market. In November 2022, TechInsights Inc., which analyzes and tracks the flash memory market, concluded that "[w]hat YMTC has accomplished has been nothing short of amazing"—YMTC "is now the leader in 3D NAND flash," having "leap-frogged Micron" and other major players in the 3D NAND space.  Ex. 30 at 2.[18]

---

[15]  https://futurememorystorage.com/program/events-awards/best-of-show-awards/winners/2018.

[16]  https://en.eeworld.com.cn/news/qrs/eic618188.html.

[17]  https://futurememorystorage.com/news/press-releases/download/113/FMS%202025%20Best%20of%20Show_FINAL.pdf.

[18]  https://www.techinsights.com/disruptive-event/ymtc-232l-tlc-3d-nand.

44.     In addition to taking the leadership role in the NAND market, YMTC also makes significant investments in research and development of DRAM related technologies.  To promote the progress of science and useful arts and protect its investments in research and development to facilitate further research and development efforts, YMTC has applied for and received numerous patents in all aspects of memory technologies for its innovations, including many United States patents.

45.     YMTC's patented innovations yield numerous benefits including, for example, the speed, performance, density, reliability, and yield of semiconductor memory chips, which in turn facilitate technological improvements in a wide variety of products including not just mobile phones, data centers, and personal computers, but also many types of products requiring memory, such as portable electronic devices and automotive infotainment systems.  YMTC's innovations make possible, or improve, many of the electronic devices that consumers depend upon and enjoy.

**B.      U.S. Patent No. 11,233,066**

46.     U.S. Patent No. 11,233,066 (the "'066 patent"), titled "Three-Dimensional Memory Device and Method for Forming the Same" issued on January 25, 2022.  A true and correct copy of the '066 patent is attached as **Exhibit 1**.  The inventors of the '066 patent are Linchun Wu and Wenxi Zhou.

47.     YMTC owns all rights, title, and interest in and to the '066 patent and has the right to sue and recover for past, present, and future infringement.

48.     The technologies disclosed in the '066 patent relate to "3D memory devices and methods for forming the same."  '066 patent at 1:37-38.  The '066 patent introduces one or more solutions to address technical problems associated with the density limitations for planar memory cells.  In other words, the '066 patent discloses, *inter alia*, technologies that uniquely focus on

improving 3D memory devices using an N-type doped region of a substrate and an N-type doped semiconductor layer, and the fabrication methods used to make the Accused Products.

49.     By way of example, one embodiment of the '066 patent discloses a "3D memory device [that] includes an N-type doped region of a substrate, an N-type doped semiconductor layer on the N-type doped region, a memory stack including interleaved conductive layers and dielectric layers on the N-type doped semiconductor layer, a channel structure extending vertically through the memory stack and the N-type doped semiconductor layer into the N-type doped region, and a source contact structure extending vertically through the memory stack and the N-type doped semiconductor layer into the N-type doped region.  A first lateral dimension of a first portion of the source contact structure surrounded by the N-type doped region is greater than a second lateral dimension of a second portion of the source contact structure surrounded by the memory stack." *Id*. at 1:39-52.

**C.     U.S. Patent No. 12,068,250**

50.     U.S. Patent No. 12,068,250 (the "'250 patent") titled "3D NAND Memory Device and Method of Forming the Same" issued on August 20, 2024.  A true and correct copy of the '250 Patent is attached as **Exhibit 2**.   The inventors of the '250 patent are Zhongwang Sun, Zhong Zhang, Wenxi Zhou, and Zhiliang Xia.

51.     YMTC owns all rights, title, and interest in and to the '250 patent and has the right to sue and recover for past, present, and future infringement.

52.     The technologies disclosed in the '250 patent relate to 3D NAND flash memory devices that may include "a substrate, a stack of word line layers and insulating layers that are stacked alternatingly over the substrate, and channel structures formed in a first array region and a second array region of the stack." '250 Pat. abstract.

53.    To solve the technical problem of "increase[ing] the bit density and reduc[ing] the bit cost of flash memory devices," especially as the technology scales to higher-density architectures, the '250 patent discloses 3D NAND flash memory devices with "a substrate, a stack of word line layers and insulating layers that are stacked alternatingly over the substrate, and channel structures formed in a first array region and a second array region of the stack." *Id.* at 1:22-25, 1:30-34.  Indeed, "[a]s the 3D NAND technology migrates towards higher density and higher capacity, for example from a 64 layer (64L) to 128L architecture, forming the stair-cased configuration of the 3D NAND device [] becomes a more time-consuming process.  In addition, the word line layers positioned at the bottom portion of the stack can have a long dimension along the step-down direction (e.g., -X direction) as the 3D NAND technology migrates to the 128L architecture, which can result in a high resistance capacitance (RC) delay." *Id.* at 6:5-15.  The '250 patent thus discloses unique and novel technologies that solve these issues through, *inter alia*, array regions at opposing sounds of the stack, channel structures formed in the array regions, and staircase configurations formed between the array regions with different directions to deliver technical benefits.

54.    By way of example, one embodiment of the '250 patent discloses a semiconductor device with staircase configurations, including "[t]he first and second array regions," which "are positioned at opposing sides of the stack." *Id.* at 1:34-35. Moreover, "[a] first staircase is formed in a connection region of the stack over the substrate. The connection region is arranged between the first and second array regions. A second staircase is formed in the connection region of the stack over the substrate, and the connection region in the stack includes a separation region between the first and second staircases." *Id.* at 1:35-42.

55.     In some embodiments, "the first staircase can have a first group of stairs (or first stairs) with a first step-down direction, and a second group of stairs (or second stairs) with a second step-down direction.  The first step-down direction is opposite to the second step-down direction, and the first group of stairs and the second group of stairs converge at a first shared stair."  *Id.* at 1:45-48. Moreover, "the second staircase can have a third group of stairs (also referred to as third stairs) with the first step-down direction, and a fourth group of stairs (also referred to as fourth stairs) with the second step-down direction so that the third group of stairs and the fourth group of stairs converge at a second shared stair."  *Id.* at 1:48-53.

**D.     U.S. Patent No. 12,094,767**

56.     U.S. Patent No. 12,094,767 (the "'767 patent") titled "Barrier Layers for Word Line Contacts in a Three-Dimensional NAND Memory and Fabrication Methods Thereof" issued on September 17, 2024.  A true and correct copy of the '767 patent is attached as **Exhibit 3**.   The inventors of the '767 patent are Ling Xu, Di Wang, Zhong Zhang, and Wenxi Zhou.

57.     YMTC owns all rights, title, and interest in and to the '767 patent and has the right to sue and recover for past, present, and future infringement.

58.     The technologies disclosed in the '767 patent relate to barrier layers in 3D NAND memory devices.  *See* '767 patent, title. To solve the technical problems faced when "increase[ing] the storage density of a 3D NAND flash memory," including where "the number of vertically stacked word lines has been significantly increased," the patent discloses providing barrier layers for word line contacts.  *Id.* at 1:1-5, 37-39.  Indeed, in some embodiments, "[t]o form contact structures for the word lines simultaneously, an etch-stop layer (e.g., silicon nitride) can be disposed on the staircase structure to avoid over-etching on upper word lines."  *Id.* at 1:42-45. But "the etch-stop layer can be lost during various processes prior to fabricating the contact structures.

Additionally, the etch-stop layer can introduce other problems. For example, a thick etch-stop layer can cause seams at tungsten refill during word line formation." *Id.* at 1:45-50.  The '767 patent thus discloses unique and novel technologies that solve these issues through, *inter alia*, alternatingly stacked conductive layers and first dielectric layers, staircase structures parallel to the substrate, a gate line slit in the dividing wall, and barrier layers for word line contacts that deliver technical benefits.

59.    The '767 patent improves 3D NAND flash memory technology. *Id.* at 1:50-52.  By way of example, the '767 patent discloses, in one embodiment, "[t]he method includes disposing an alternating dielectric stack on a substrate in a first direction perpendicular to the substrate; and forming a staircase structure and a dividing wall in the alternating dielectric stack. The staircase structure and the dividing wall extend in a second direction parallel to the substrate, and the dividing wall is adjacent to the staircase structure." *Id.* at 1:60-2:1. The method may also include "forming, sequentially on the staircase structure, a first barrier layer and a second barrier layer different from the first barrier layer." *Id.* at 2:1-3. The method may further include "forming a gate line slit (GLS) opening in the dividing wall. The GLS opening penetrates through the alternating dielectric stack in the first direction and is distant from the second barrier layer in a third direction that is parallel to the substrate and is perpendicular to the second direction." *Id.* at 2:3-9.

E.    **U.S. Patent No. 12,075,621**

60.    U.S. Patent No. 12,075,621 (the "'621 patent"), titled "Three-Dimensional Memory Device and Method for Forming the Same" issued on August 27, 2024.  A true and correct copy of the '621 patent is attached as **Exhibit 4**.  The inventors of the '621 patent are Yuancheng Yang, Lei Liu, and Wenxi Zhou.

61.    YMTC owns all rights, title, and interest in and to the '621 patent and has the right to sue and recover for past, present, and future infringement.

62.    The technologies disclosed in the '621 patent relate to a "3D memory device [that] includes a doped semiconductor layer, a stack structure, and a channel structure." *See* '621 Pat. abstract.  A 3D semiconductor device "can be formed by stacking semiconductor wafers or dies and interconnecting them vertically so that the resulting structure acts as a single device to achieve performance improvements at reduced power and a smaller footprint than the conventional planar process." *Id*. at 1:32-38.  The '621 patent introduces one or more solutions to address technical problems associated with the 3D semiconductor devices by disclosing, *inter alia*, unique bonding techniques for stacking semiconductor substrates.

63.    By way of example, one embodiment of the '621 patent discloses a 3D memory device that includes "a doped semiconductor layer," "a stack structure," and "a channel structure." *Id*. at 1:45-47.  The stack structure includes "interleaved conductive layers and dielectric layers formed on the doped semiconductor layer," the conductive layers include "a plurality of word lines, and a drain select gate line," and the channel structure "extends through the stack structure along a first direction and is in contact with the doped semiconductor layer" and "includes a semiconductor channel, and a memory film over the semi-conductor channel." *Id*. 1:47-54.  "The drain select gate line is in direct contact with the semiconductor channel, each of the plurality of word lines is in direct contact with the memory film, and the drain select gate line and the plurality of word lines include a same material." *Id*. at 1:55-59.

**F.    U.S. Patent No. 12,232,313**

64.    U.S. Patent No. 12,232,313 (the '313 patent") titled "Staircase Structure in Three-Dimensional Memory Device and Method for Forming the Same" issued on February 18, 2205.

21

A true and correct copy of the '313 Patent is attached as **Exhibit 5**. The inventors of the '313 patent are Zhong Zhang, Zhongwang Sun, Wenxi Zhou, and Zhiliang Xia.

65.    YMTC owns all rights, title, and interest in and to the '313 patent and has the right to sue and recover for past, present, and future infringement.

66.    The technologies disclosed in the '313 patent relate to the structure of 3D NAND memory device which includes a memory array and peripheral devices for controlling signals to and from the memory array. *See* '313 Pat. abstract. For example, the '313 patent introduces a staircase structure in an intermediate of the memory array structure where the staircase structure is divided by zones and connected to the memory array structure through a bridge structure. Thus, the '313 patent discloses, *inter alia*, unique technologies relating to 3D NAND memory structure to address problems related to the density limitation for planar memory cells. *Id*. at 1:30-43. The disclosed solution can, for example, enable a bilateral wordline driving scheme for reducing RC delay and further reducing the fabrication complexity and increasing the yield.

67.    By way of example, one embodiment of the '313 patent discloses a 3D memory device that includes a memory array structure laterally divided by a staircase structure into two memory array structures. *Id*. at 1:50-54. The staircase structure includes a "staircase zone" and a "bridge structure" which connects the two memory array structures, and the staircase zone further includes a first pair of staircases facing each other in a first lateral direction and at different depths. *Id*. at 1:54-59. Each of the staircase has multiple stairs and at least one stair in the first pair of staircases is electrically connected to at least one of the first memory array structure and the second memory array structure through the bridge structure. *Id*. at 59-63.

**G.     U.S. Patent No. 12,266,403**

68.     U.S. Patent No. 12,266,403 (the "'403 patent") titled "Three-Dimensional NAND Memory and Fabrication Method Thereof" issued on April 1, 2025.  A true and correct copy of the '403 Patent is attached as **Exhibit 6**.  The inventors of the '403 patent are Di Wang, Wenxi Zhou, Tingting Zhao, and Zhiliang Xia.

69.     YMTC owns all rights, title, and interest in and to the '403 patent and has the right to sue and recover for past, present, and future infringement.

70.     The technologies disclosed in the '403 patent relate to methods for forming a 3D memory device.  '403 Pat. abstract.  As the number of vertically stacked layers in 3D memory devices increases, "feature sizes of the memory cells have also been scaled down to further increase the storage density," and accordingly, the process window in the fabrication of 3D memory devices has been reduced.  *Id*. at 1:27-41.  The '403 patent introduces one or more solutions to address technical needs in "forming a 3D NAND flash memory with high density and improved product yield."  *Id*.  The '403 patent discloses, *inter alia*, unique technologies relating to the manufacturing 3D NAND memory device such as using an etch-stop layer disposed on TSG film stack's outermost side away from the substrate and functioned as an etch stop for forming the bit line ("BL") contact opening and the GLS trench of the 3D NAND memory device.

71.     By way of example, one embodiment of the '403 patent discloses a method of manufacturing a 3D NAND memory device by, among others, forming a first and second dielectric stacks on a substrate; forming an etch-stop layer on the second dielectric stack; forming a GLS trench that penetrates at least the etch-stop layer; forming a GLS opening in the GLS trench that penetrates through the second and the first dielectric stacks and extends into the substrate. The GLS trench is wider than the GLS opening. *Id*. at 1:48-61.

**H.     U.S. Patent No. 12,254,925**

72.    U.S. Patent No. 12,254,925 (the "'925 patent") titled "Control Method and Controller of 3D NAND Flash" issued on March 18, 2025.  A true and correct copy of the '925 patent is attached as **Exhibit 7**.   The inventors of the '925 patent are Ying Huang, Hongtao Liu, Qiguang Wang, and Wenzhe Wei.

73.    YMTC owns all rights, title, and interest in and to the '925 patent and has the right to sue and recover for past, present, and future infringement.

74.    The technologies disclosed in the '925 patent "relate[] to a control method and controller of 3D NAND flash, and more particularly, to a control method and controller capable of enhancing programming performance for the 3D NAND flash." '925 patent at 1:18-21.

75.    In a NAND flash, each memory element is configured to store a charge, voltage, or other electrical parameter to represent the data in a plurality of bit-cells (or memory elements). *Id.* at 1:32-35.  "A programing process comprises a plurality of programming voltage pulses in a plurality of programming stages," where the voltage pulses "are increased by the value Vispp" to make sure the programming is successful.  *Id*. at 1:35-52.  The '925 patent discloses a control method and controller of 3D NAND flash to improve the control of the number of programming voltage pulse (so called "pulse count") in multi-level cell (MCL), triple-level cell (TCL), and quad-level cell (QCL) for which the programming time requirement is more critical.  *Id*.

76.    The '925 patent introduces one or more solutions to address technical problems associated with 3D NAND memory devices, such as adjusting the pulse widths of the plurality of the programming voltage pulses in the programming stage.    In other words, the '925 patent discloses, *inter alia*, technologies that uniquely focus on the programing process of the Accused Products.

24

77.    By way of example, one embodiment of the '925 patent discloses a control method of a programming process for a 3D NAND flash memory array that comprises "programming a bit-cell of the 3D NAND flash memory array in a programming stage" and verifying whether the bit-cell "is programmed in a verification stage after the programming stage." *Id*. at 1:53-58.  The programming stage comprises "programming the bit-cell of the 3D NAND flash memory array with a plurality of programming voltage pulses" and the verification stage comprises "reading the bit-cell of the 3D NAND flash memory array with a voltage lower or higher than a normal reading voltage pulse." *Id*. at 1:58-64.

**I.    U.S. Patent No. 10,707,851**

78.    U.S. Patent No. 10,707,851 (the "'851 patent"), titled "Double Data Rate Circuit and Data Generation Method Implementing Precise Duty Cycle Control" issued on July 7, 2020. A true and correct copy of the '851 patent is attached as **Exhibit 8**.  The inventors of the '851 patent are Daesik Song and Jae Hyeong Kim.

79.    YMTC owns all rights, title, and interest in and to the '851 patent and has the right to sue and recover for past, present, and future infringement.

80.    The technologies disclosed in the '851 patent relate to "high-speed data processing, and specifically, to a double data rate [(DDR)] circuit and a generation method implementing precise duty cycle control." '851 pat. at 1:16-18.

81.    DDR Synchronous Dynamic Random-Access Memory (DDR SDRAM) is a type of synchronous dynamic random-access memory widely used in computers and other electronic devices. DRAM typically takes the form of an integrated circuit chip, which can consist of billions of DRAM memory cells. The DDR system improves on earlier SDRAM technology by "transfer[ring] data on both the rising and falling edges of a clock signal."  *Id*. at 1:22-23.

Accordingly, "output data from a DDR circuit are aligned to the rising and falling edge of a clock signal, and therefore, the duty cycle of the clock signal has a direct impact on the data window of the output data," and "a 50%-duty-cycle, low-jitter clock is essential to optimize timing performance of output data." *Id*. at 24-32.

82.    The technologies disclosed in the '851 patent, *inter alia*, uniquely focus on the control of DDR circuit.  By way of example, the '851 patent discloses a DDR circuit design and data generation method that implements precise duty cycle control to satisfy timing requirements, decrease data skew, reduce error rate, and enhance overall system performance.

## THE ACCUSED PRODUCTS AND INFRINGING ACTIVITIES

83.    Micron is a global manufacturer and supplier of memory components and devices for use in consumer and enterprise products, systems, and services.

84.    Micron designs, makes, uses, sells, offers for sale, imports, supplies, or otherwise distributes into the United States NAND and DRAM memory devices and products that include those memory devices that infringe the Asserted Patents, including by way of example 176-layer NAND devices (the "176L Accused Products"), 232-layer NAND devices (the "232L Accused Products"), 276-layer NAND devices (the "276L Accused Products"), Low-Power DDR5 DRAM devices ("LPDDR5 Accused Products"), and Low-Power DDR5X DRAM devices ("LPDDR5X Accused Products") (collectively, the "Accused Products").

85.    The Accused Products are made, used, sold, offered for sale, imported, supplied, or otherwise distributed in the United States by among others, Micron, Micron's agent Avnet, Micron's customers, original equipment manufacturers ("OEMs"), original design manufacturers

("ODMs"), distributors, resellers, and other third parties, including under Micron's own brand name and under the Crucial brand name.  *See, e.g.* Ex. 39.[19]

86.    Micron actively encourages and induces others, such as its agent Avnet, customers, and distributors, to make, use, offer to sell, import, supply, or otherwise distribute into the United States the Accused Products.  For example, as explained in Micron's 2024 Form 10-K:

> Our semiconductor memory and storage products are offered under our Micron and Crucial brand names and through private labels. We market our semiconductor memory and storage products primarily through our own direct sales force and maintain sales or representative offices to support our worldwide customer base. Our products are also offered through distributors, retailers, and independent sales representatives. Our distributors carry our products in inventory and typically sell a variety of other semiconductor products, including our competitors' products.

Ex. 9 at 10.

87.    Micron's development, sales, marketing, and manufacturing activities in the United States, including within this judicial District, directly contributed to over $5 billion in net income in the first three quarters of fiscal year of 2025.  Ex. 40 at 5 (Micron 2025 Q3 10-Q).

88.    Avnet serves a critical role in assisting Micron in supplying the Accused Products in the United States.   For the fiscal year ended on June 28, 2025, Avnet made more than $17.2 billion revenues in sales of semiconductor products, including the Accused Products, with its gross margin at around 10.7%.  Ex. 41 (Avnet 2025 Form 10k) at 5, 24.

89.    Micron and Avnet knew and know that YMTC has patents in the semiconductor memory space. For example, there are a limited number of companies competing to make advanced generation 3D NAND products; Micron and Avnet know that YMTC is one of them; and

---

[19]    https://www.crucial.com/; https://www.micron.com/markets-industries/client-pc; https://www.micron.com/markets-industries/data-center-servers; https://www.micron.com/markets-industries/industrial; https://www.micron.com/markets-industries/mobile;

Micron and Avnet know that YMTC actively patents in that area as well as other memory related technologies. Many YMTC-owned patents are cited on the face of Micron's own patents (including patent publications of one or more of the Asserted Patents), demonstrating Micron's knowledge of YMTC's patent portfolio that is highly relevant to Micron's own 3D NAND and DDR5 products. Micron has actual knowledge of YMTC's patents in the semiconductor memory space, and yet Micron has not sought or received authorization to use those patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,233,066

90.    YMTC restates and incorporates by reference the allegations made in Paragraphs 3-89 of the Complaint above.

91.    Defendants have infringed, and will continue to infringe, one or more claims of the '066 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including at least certain 232L and 276L Accused Products and products that incorporate these NAND flash devices (for example, Micron 2550 SSD with NVMe and Micron's 2650 SSD with NVMe).  *See* Ex. 42 (Micron 2550 SSD)[20]; Ex. 43 (Micron 2650 SSD).[21]

92.    Defendants also have infringed, and will continue to infringe under 35 U.S.C. § 271(g) by unlawfully importing into the United States or offering to sell, selling, or using within the United States the Accused Products, including at least certain 232L and 276L Accused Products and products that incorporate these NAND flash devices, which are made by a process that infringes one or more claims of the '066 patent.

---

[20]    https://investors.micron.com/news-releases/news-release-details/micron-ships-worlds-first-232-layer-nand-extends-technology.

[21]    https://www.micron.com/products/storage/ssd/client-ssd/2650-ssd.

93.    By way of example, the Accused Products include 232L products with the part or die name or number B57T, N58R, B58R, and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products.  *See* Ex. 44 (Micron N58R 232L QLC 3D NAND);[22] Ex. 45 (Micron B58R 232L TLC 3D NAND);[23] Ex. 46 (Micron B57T 232L TLC 3D NAND).[24]  As another example, the Accused Products include 276L Accused Products and products that incorporate these NAND flash devices, including 276L products with the part or die name or number B68S and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products. *See* Ex. 47 (Micron 2650 SSD with NVMe technical brief);[25] Ex. 48 (Micron B68S 2yyL (G9) TLC 3D NAND).[26]

94.    The Accused Products infringe one or more claims of the '066 patent.  For example, claim 1 of the '066 patent recites:

1. A three-dimensional (3D) memory device, comprising:

an N-type doped region of a substrate;

an N-type doped semiconductor layer on the N-type doped region;

---

[22]  https://www.techinsights.com/blog/micron-n58r-232l-1tb-qlc-3d-nand-floorplan-analysis.

[23]  https://www.techinsights.com/products/iwo-2303-801.

[24]  https://www.techinsights.com/blog/micron-technology-mt29f2t08elllhl4-qal-232l-512gb-tlc-3d-nand-flash-memory-floorplan-analysis.

[25]  https://assets.micron.com/adobe/assets/urn:aaid:aem:7da012da-94a9-442e-b914-cbf9b06f3502/renditions/original/as/2650-nvme-ssd-product-brief.pdf.

[26]  https://library.techinsights.com/public/hg-content/c332ab3d-3e57-4000-b171-e15f847d3cb5?anchor=10.%20Copyright.

a memory stack comprising interleaved conductive layers and dielectric layers on the N-type doped semiconductor layer;

a channel structure extending vertically through the memory stack and the N-type doped semiconductor layer into the N-type doped region; and

a source contact structure extending vertically through the memory stack and the N-type doped semiconductor layer into the N-type doped region, wherein:

a first lateral dimension of a first portion of the source contact structure surrounded by the N-type doped region is greater than a second lateral dimension of a second portion of the source contact structure surrounded by the memory stack; and

a third lateral dimension of a third portion of the source contact structure surrounded by the N-type doped semiconductor layer is greater than the second lateral dimension of the second portion of the source contact structure.

'066 pat. Cl. 1.

95.    Micron's 232L and 276L Accused Products include each and every claim limitation of Claim 1 of the '066 patent.

96.    By way of example, each of the 232L and 276L Accused Products includes a 3D memory device, including, *e.g.*, Micron's 2550 SSD with NVMe and Micron's 2650 SSD with NVMe. *See* Ex. 49 (Micron® 2550 NVMe™ SSD Technical Brief) at 1;[27] Ex. 47 (Micron 2650 NVMe SSD Technical Brief) at 1.

---

[27]    https://assets.micron.com/adobe/assets/urn:aaid:aem:e68a7055-06c2-4655-9da1-5b17525929fd/renditions/original/as/2550-nvme-ssd-product-brief.pdf.

**Micron 2650 SSD key benefits**

**The world's first client SSD in production with ninth-generation 3D NAND**
Industry-leading NAND brings technological breakthroughs that help improve user experience and SSD performance:

- **Best-in-class IO speed**
  An impressive ONFI rate up to 3,600 MT/s that is up to 50% faster than competing NAND.[4]

- **Six-plane NAND architecture**
  Industry-leading six-plane TLC NAND has the most planes per die of any TLC flash to help improve parallelism and simultaneous read/write commands support.

**Micron 2550 SSD KEY BENEFITS**

**The World's First Client SSD From a NAND OEM With >200-Layer NAND**

The Micron 2550 SSD is built with Micron's industry-leading 232-layer NAND, delivering density and power advantages. This leading-technology NAND offers 100% higher write bandwidth and more than 75% higher read bandwidth per die than our prior generation and is the world's first six-plane production TLC.[3]

97.    The Micron SSDs include, *inter alia*, Micron's 232-Layer NAND memory devices with N58R, B57T, and/or B58R die and Micron's 276-Layer NAND memory devices with B68S die and other memory chips that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes.  The B57T, B58R, N58R, B68S dies are 3D NAND dies manufactured by Micron.  *See, e.g.*, Ex. 50 (Micron SpecTek Buyers Guide);[28] Ex. 56 (Micron 3D NAND White Paper)[29]

98.    On information and belief, the 232L and 276L Accused Products includes an N-type doped region of a substrate and an N-type doped semiconductor layer on the N-type doped region, where the N-type doped semiconductor layer contains a memory stack with interleaved

---

[28]   https://assets.micron.com/adobe/assets/urn:aaid:aem:046df55d-54fc-452c-8f74-baff6336c888/original/as/spectekbuyersguide.pdf.

[29]   https://assets.micron.com/adobe/assets/urn:aaid:aem:3c193535-1112-4b90-a5d8-3545ed0b021b/renditions/original/as/micron-rg-3d-nand-whitepaper.pdf.

conductive layers and dielectric layers.  *See, e.g.*, Ex. 51 (Micron G8 NAND infographic)[30]; Ex. 52 (Micron G9 NAND infographic).[31]



99.    On information and belief, the 232L and 276L Accused Products contain a channel structure and a source contact structure that extend vertically through the memory stack and the N-type doped semiconductor layer into the N-type doped region.  On information and belief, the first lateral dimension of a first portion of the source contact structure surrounded by the N-type doped region is greater than a second lateral dimension of a second portion of the source contact structure surrounded by the memory stack; and a third lateral dimension of a third portion of the source contact structure surrounded by the N-type doped semiconductor layer is greater than the second lateral dimension of the second portion of the source contact structure.

100.    Accordingly, for at least these reasons, the 232L and 276L Accused Products infringe at least claim 1 of the '066 patent. The 232L and 276L Accused Products are non-limiting examples identified based on publicly available information, and YMTC reserves the right to

---

[30]    https://assets.micron.com/adobe/assets/urn:aaid:aem:749f75c7-9828-4967-bcb5-e73f85a4acee/renditions/original/as/gcm-Infographic-232l-nand.pdf.

[31]    https://youtu.be/SWACz2ZE52Y?si=TsU-v8pf4x5qaiKO.

identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

101.    Defendants have been aware of the '066 patent since at least the filing date of this Complaint.

102.    Defendants actively induced and are actively inducing infringement of one or more claims of the '066 patent, in violation of 35 U.S.C. § 271(b), by inducing others to directly infringe the '066 patent, at least by using the Accused Products.  Defendants' customers and end-users of the Accused Products directly infringe one or more claims of the '066 patent.

103.    Defendants knowingly induce infringement of one or more claims of the '066 patent, including for example Claim 1 of the '066 patent, by manufacturers, customers, and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

104.    For example, Micron advertises its 232L Accused Products through its website.  Ex. 53.[32] Micron emphasizes that its "first-to-market 232-layer technology represents Micron's sixth generation of NAND going into high-volume manufacturing."  *Id*.  Further, "[t]he breakthrough high layer count, along with CuA technology, allows us to deliver huge storage capacity up to 1 terabit per chip on a very small footprint" and provides a bit density per area on the 232-layer "over 45% higher than that for the previous 176-layer generation, an amazing increase in capability!"  *Id*.  Micron further provides an infographic on the 232L Accused Products and refer

---

[32]    https://www.micron.com/about/blog/memory/nand/first-to-market-second-to-none-the-worlds-first-232-layer-nand?srsltid=AfmBOoqEbwDYfn_-QLAoI8D6HKm5r-XL-zwB2p9x4JEZJRhfb8D-FmeJ.

to these products as "[t]he foundation for a new wave of end-to-end technology innovation."  Ex. 51.

105.    As another example, Avnet advertises Micron's 232L Accused Products through its website.  Ex. 54.[33]  For instance, Avnet emphasized the "Key features," "Applications," and benefits of the Micron 2550 NVMe SSD products, including their use in "Industrial PC, Client PC, Robotics, Avionics, and POS."  *Id*.

106.    Additionally, Micron advertises its 276L Accused Products through its website.  Ex. 55.[34]  According to Micron, the G9 NAND flash memory supports "[h]igh-performance storage for [customers'] PC and mobile devices, automobiles, data centers and the AI-enabled cloud."  *Id*. at 1.  Micron highlights that its 2650 SSD products' "key benefits," including incorporating the "9th generation [G9] 3D NAND," which is an "[i]ndustry-leading NAND" that "brings technological breakthroughs that help improve user experience and SSD performance."  Ex. 47 (Micron 2650 NVMe SSD).  Among other benefits, The Micron 2650 SSD offers "Up to 70% better sequential read," "Up to 103% better sequential write," "Up to 156% better random read," and "Up to 85% better random write."  *Id*.  Micron further emphases that its G9 NAND "delivers industry leading I/O speeds up to 3.6 GB/s and up to a 50% faster data transfer rate to meet the high throughput needs of today's PC platform."  Ex. 43.

107.    Defendants instruct manufacturers, customers, and end users, at least through its technical, marketing, promotional, and instructional materials, to use the infringing Accused Products, including as described in detail above.

---

[33]    https://my.avnet.com/ebv/products/new-products/npi/2022/micron-technology-2550-nvme-ssd/.

[34]    https://www.micron.com/products/storage/nand-flash/g9-nand.

108.    Defendants contributed and are contributing to infringement of one or more claims of the '066 patent, in violation of 35 U.S.C. § 271(c), by Defendants' customers and end-users of the Accused Products.

109.    The Accused Products are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '066 patent, including for example Claim 1 of the '066 patent.  For example, the Accused Products incorporate an N-type doped region of a substrate, an N-type doped semiconductor layer, a memory stack including interleaved conductive layers and dielectric layers on the semiconductor layer, and a channel structure and a source contact structure extending vertically through the memory stack and the N-type doped semiconductor layer into the N-type doped region, where the lateral dimension of the source contact structure is wider in the portion surrounded by the N-type doped region than the portion surrounded by the memory stack.  These features constitute a material part of the invention of one or more of the claims of the '066 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

110.    Further, Micron instructs its agent Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

111.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

112.    Defendants have infringed and continue to infringe under 35 U.S.C. § 271(g) by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States during the term of the '066 patent. Defendant have practiced the patented process; or own or control, or are owned or controlled by

the person who has practiced the patented process. Defendants sell the Accused Products to customers, including customers in this District, in, for example, the computer, networking, storage, consumer electrics, solid-state drive, and mobile telecommunications markets.

113.   Defendants' infringement of the '066 patent is without license or other authorization.

114.   Because Defendants had knowledge of the '066 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

115.   Defendants' continued infringement of the '066 patent has damaged and will continue to damage YMTC.

116.   Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '066 patent. Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

117.   This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,068,250

118.   YMTC restates and incorporates by reference the allegations made in Paragraphs 3-117 of the Complaint above.

119.   Defendants have infringed, and will continue to infringe, one or more claims of the '250 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including at least certain 232L and 276L Accused Products and products that

incorporate these NAND flash devices, for example, Micron 2550 SSD with NVMe and Micron's 2650 SSD with NVMe.  *See* Ex. 42 (Micron 2550 SSD); Ex. 43 (Micron 2650 SSD).

120.    By way of example, the Accused Products include 232L products with the part or die name or number B57T, N58R, B58R, and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products. *See* Ex. 44 (Micron N58R 232L QLC NAND); Ex. 45 (Micron B58R 232L TLC NAND); Ex. 46 (Micron B57T 232L TLC NAND).  As another example, the Accused Products include 276L Accused Products and products that incorporate these NAND flash devices, including 276L products with the part or die name or number B68S and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products.  *See* Ex. 47 (Micron 2650 SSD with NVMe technical brief); Ex. 48 (Micron B68S 2yyL (G9) TLC 3D NAND).

121.    The Accused Products infringe one or more claims of the '250 patent.  For example, Claim 1 of the '250 patent recites:

> 1. A semiconductor device, comprising:
>
> a stack of word line layers and insulating layers that are stacked alternatingly; and
>
> channel structures formed in a first array region and a second array region of the stack, the first array region and the second array region being positioned at opposing sides of the stack, wherein
>
> a first staircase is formed between the first array region and the second array region,
>
> a second staircase is formed between the first array region and the second array region,
>
> a portion of the stack is positioned between the first staircase and the second staircase and between the first array region and the second array region,

the first staircase has first stairs with a first step-down direction and second stairs with a second step-down direction, the first step-down direction being opposite to the second step-down direction, and

each of all of the first stairs and each of all of the second stairs corresponds to a different one of the word line layers.

'250 Pat. Cl. 1.

122.    Micron's 232L and 276L Accused Products include each and every claim limitation of Claim 1 of the '250 patent.

123.     By way of example, each of the 232L and 276L Accused Products constitutes a semiconductor device, including, *e.g.*, Micron's 2550 NVMe SSD and 2650 NVMe SSD.  Ex. 49 (Micron® 2550 NVMe™ SSD Technical Brief) at 1; Ex. 47 (Micron 2650 NVMe SSD) at 1.

| Micron® 2550 NVMe SSD | | | |
|---|---|---|---|
| Category | PCIe Gen4 PCs and Notebooks | | |
| Model | Micron 2550 NVMe SSD | | |
| Form Factor (mm) | M.2 (22x30mm, 22x42mm, 22x80mm) | | |
| Interface | PCIe Gen4, NVMe 1.4 | | |
| Capacities[7] | 256GB[8] | 512GB | 1TB |
| Sequential Read (MB/s)[9] | 4,500 | 5,000 | 5,000 |
| Sequential Write (MB/s) | 2,000 | 4,000 | 4,000 |
| Random Read (IOPS)[10] | 380K | 500K | 550K |
| Random Write (IOPS) | 400K | 600K | 600K |
| Read Latency (TYP)[11] | 50µs | 50µs | 50µs |
| Write Latency (TYP) | 12µs | 12µs | 12µs |
| Endurance (TBW) | 150TB | 300TB | 600TB |
| MTTF (Million Hours) | 2 | 2 | 2 |
| Sleep/PS4 Power (mW) | <2.5 | <2.5 | <2.5 |
| Slumber/PS3 Power (mW) | <30 | <30 | <30 |
| Active Idle Power (mW) | <150 | <150 | <150 |
| Active Read Power (mW)[12] | <5,500 | <5,500 | <5,500 |
| Advanced Features | Hardware-based AES 256-bit encryption[13] Power-loss protection (data at rest) RAIN & S.M.A.R.T. Power-loss signal support TCG Opal 2.01, TCG Pyrite 2.01 Micron Storage Executive management tool | | |

| Micron 2650 NVMe SSD | | | |
|---|---|---|---|
| Category | Everyday use for PCs and notebooks | | |
| Model | Micron 2650 SSD | | |
| Form factor | M.2 (22 x 30mm, 22 x 42mm, 22 x 80mm) | | |
| Interface | PCIe Gen4, NVMe 1.4c | | |
| Capacities[7] | 256GB | 512GB | 1TB |
| Sequential read (MB/s)[8] | 5,000 | 7,000 | 7, 000 |
| Sequential write (MB/s)[8] | 2,500 | 4,800 | 6,000 |
| Random read (KIOPS)[9] | 370 | 740 | 1,000 |
| Random write (KIOPS)[9] | 500 | 1,000 | 1,000 |
| Read latency (TYP)[10] | 50µs | 50µs | 50µs |
| Write latency (TYP)[10] | 12µs | 12µs | 12µs |
| Endurance (TBW) | 200TB | 300TB | 600TB |
| MTTF (million hours) | 2 | 2 | 2 |
| Sleep/PS4 power (mW) | <2.5 | <2.5 | <2.5 |
| Active idle power (mW) | <150 | <150 | <150 |
| PCIe Gen4 active read power (mW) | <6,100 | <6,100 | <6,100 |
| Advanced features | Micron 3D 276-layer TLC NAND | | |

124.    The Micron SSDs include, *inter alia*, Micron's 232-Layer NAND memory devices with B57T, N58R, and/or B58R die and Micron's 276-Layer NAND memory devices with B68S die and other memory chips that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes.   The B57T, B58R, N58R, and

B68S dies are a 3D NAND dies manufactured by Micron. *See* Ex. 50 (Micron SpecTek Buyers Guide); Ex. 56 (Micron 3D NAND White Paper).

125.    The Micron 232L and 276L Accused Products are semiconductor devices that include*, e.g.*, a stack of word line layers and insulating layers that are stacked alternatingly.  *See, e.g.*, Ex. 49 (Micron® 2550 NVMe™ SSD Technical Brief) ("Micron's advanced 232-layer NAND features the world's first six-plane production TLC NAND — the most planes per die of any NAND flash available. When combined with an ***independent wordline on each of these six planes,*** sequential and random input/output operations are improved compared to previous generations of NAND.") (emphasis added); Ex. 47 (Micron 2650 NVMe SSD) at 1, 2 ("Micron 2650 SSD key benefits . . . six-plane NAND architecture" and "Advanced features: Micron 3D 276-layer TLC NAND")

126.    On information and belief, the 232L and 276L Accused Products include channel structures formed in a first array region and a second array region of the stack, the first array region and the second array region being positioned at opposing sides of the stack.  Moreover, the 232L and 276L Accused Products include a first staircase, which is formed between the first array region and the second array region, and a second staircase, which is formed between the first array region and the second array region.  In the 232L and 276L Accused Products, a portion of the stack is positioned between the first staircase and the second staircase and between the first array region and the second array region.  Further, the first staircase has first stairs with a first step-down direction and second stairs with a second step-down direction, the first step-down direction being opposite to the second step-down direction, and each of all the first stairs and each of all the second stairs corresponds to a different one of the word line layers in the 232L and 276L Accused Products.

127.    Accordingly, for at least these reasons, the 232L and 276L Accused Products infringe at least Claim 1 of the '250 patent. The 232L and 276L Accused Products are non-limiting examples identified based on publicly available information, and YMTC reserves the right to identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

128.    Defendants have been aware of the '250 patent since at least the filing date of this Complaint.

129.    Defendants actively induced and are actively inducing infringement of one or more claims of the '250 patent, in violation of 35 U.S.C. § 271(b), by inducing others to directly infringe the '250 patent, at least by using the Accused Products.  Defendants' customers and end-users of the Accused Products directly infringe one or more claims of the '250 patent.

130.    Defendants knowingly induce infringement of one or more claims of the '250 patent, including for example Claim 1 of the '250 patent, by manufacturers, customers, and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

131.    For example, Micron advertises its 232L Accused Products through its website.  Ex. 53.  Micron emphases that its "first-to-market 232-layer technology represents Micron's sixth generation of NAND going into high-volume manufacturing." *Id*.  Further, "[t]he breakthrough high layer count, along with CuA technology, allows us to deliver huge storage capacity up to 1 terabit per chip on a very small footprint" and provides a bit density per area on the 232-layer "over 45% higher than that for the previous 176-layer generation, an amazing increase in

capability!"  *Id*.  Micron provides an infographic on the 232L Accused Products and refer to these products as "[t]he foundation for a new wave of end-to-end technology innovation."  Ex. 51.

132.    As another example, Avnet advertises Micron's 232L Accused Products through its website.  Ex. 54.  For instance, Avnet emphasized the "Key features," "Applications," and benefits of the Micron 2550 NVMe SSD products, including their use in "Industrial PC, Client PC, Robotics, Avionics, and POS."  *Id*.

133.    Additionally, Micron advertises its 276L Accused Products through its website.  Ex. 55.  According to Micron, the G9 NAND flash memory supports "[h]igh-performance storage for [customers'] PC and mobile devices, automobiles, data centers and the AI-enabled cloud."  *Id*. at 1.  Micron highlights that its 2650 SSD products' "key benefits," including incorporating the "9th-generation [G9] 3D NAND," which is an "[i]ndustry-leading NAND" that "brings technological breakthroughs that help improve user experience and SSD performance."  Ex. 47 (Micron 2650 NVMe SSD).  Among other benefits, The Micron 2650 SSD offers "Up to 70% better sequential read," "Up to 103% better sequential write," "Up to 156% better random read," and "Up to 85% better random write."  *Id*.  Micron further emphases that its G9 NAND "delivers industry leading I/O speeds up to 3.6 GB/s and up to a 50% faster data transfer rate to meet the high throughput needs of today's PC platform."  Ex. 43.

134.    Defendants instruct manufacturers, customers, and end users, at least through its technical, marketing, promotional, and instructional materials, to use the infringing Accused Products, including as described in detail above.

135.    Defendants contributed and are contributing to infringement of one or more claims of the '250 patent, in violation of 35 U.S.C. § 271(c), by Defendants' customers and end-users of the Accused Products.

136.    The Accused Products are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '250 patent, including for example Claim 1 of the '250 patent.  For example, the Accused Products incorporate a first staircase formed between the first array region and the second array region, a second staircase formed between the first array region and the second array region, and each staircase having groups of stairs with opposing step-down directions.  These features constitute a material part of the invention of one or more of the claims of the '250 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

137.    Further, Micron instructs its agent Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

138.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

139.    Defendants' infringement of the '250 patent is without license or other authorization.

140.    Because Defendants had knowledge of the '250 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

141.    Defendants' continued infringement of the '250 patent has damaged and will continue to damage YMTC.

142.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '250 patent.  Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no

adequate remedy at law.  Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

143.    This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 12,094,767

144.    YMTC restates and incorporates by reference the allegations made in Paragraphs 3-143 of the Complaint above.

145.    Defendants have infringed, and will continue to infringe, one or more claims of the '767 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including at least certain 232L and 276L Accused Products and products that incorporate these NAND flash devices (for example, Micron 2550 SSD with NVMe and Micron's 2650 SSD with NVMe).  *See* Ex. 42 (Micron 2550 SSD); Ex. 43 (Micron 2650 SSD).

146.    By way of example, the Accused Products include 232L products with the part or die name or number B57T, N58R, B58R, and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products.  *See* Ex. 44 (Micron N58R 232L QLC 3D NAND); Ex. 45 (Micron B58R 232L TLC 3D NAND); Ex. 46 (Micron B57T 232L TLC 3D NAND).  As another example, the Accused Products include 276L Accused Products and products that incorporate these NAND flash devices, including 276L products with the part or die name or number B68S and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products.

*See* Ex. 47 (Micron 2650 SSD with NVMe technical brief); Ex. 48 (Micron B68S 2yyL (G9) TLC 3D NAND).

147.    The Accused Products infringe one or more claims of the '767 patent.  For example, Claim 1 of the '767 patent recites:

> 1. A memory device, comprising:
>
> a film stack, comprising:
>
> conductive layers and first dielectric layers alternatingly stacked on a substrate in a first direction perpendicular to the substrate;
>
> a staircase structure extending in a second direction parallel to the substrate; and
>
> a dividing wall extending in the second direction and located adjacent to the staircase structure;
>
> a gate line slit (GLS) disposed in the dividing wall, wherein the GLS penetrates through the film stack in the first direction and extends in the second direction;
>
> a first barrier layer disposed on the staircase structure; and
>
> a second barrier layer disposed on the first barrier layer in a first region of the staircase structure, wherein the second barrier layer, different from the first barrier layer, is distant from the GLS in a third direction parallel to the substrate and perpendicular to the second direction.

'767 Pat. Cl. 1.

148.    Micron's 232L and 276L Accused Products practice each and every claim limitation of Claim 1 of the '767 patent.

149.    By way of example, each of the 232L and 276L Accused Products constitutes a memory device with a film stack, including, *e.g.*, Micron's 2550 NVMe SSD and 2650 NVMe SSD.  *See* Ex. 49 (Micron® 2550 NVMe™ SSD Technical Brief) at 1; Ex. 47 (Micron 2650 NVMe SSD Technical Brief) at 1.

| Micron® 2550 NVMe SSD | | | |
|---|---|---|---|
| Category | PCIe Gen4 PCs and Notebooks | | |
| Model | Micron 2550 NVMe SSD | | |
| Form Factor (mm) | M.2 (22x30mm, 22x42mm, 22x80mm) | | |
| Interface | PCIe Gen4, NVMe 1.4 | | |
| Capacities[7] | 256GB[8] | 512GB | 1TB |
| Sequential Read (MB/s)[9] | 4,500 | 5,000 | 5,000 |
| Sequential Write (MB/s) | 2,000 | 4,000 | 4,000 |
| Random Read (IOPS)[10] | 380K | 500K | 550K |
| Random Write (IOPS) | 400K | 600K | 600K |
| Read Latency (TYP)[11] | 50µs | 50µs | 50µs |
| Write Latency (TYP) | 12µs | 12µs | 12µs |
| Endurance (TBW) | 150TB | 300TB | 600TB |
| MTTF (Million Hours) | 2 | 2 | 2 |
| Sleep/PS4 Power (mW) | <2.5 | <2.5 | <2.5 |
| Slumber/PS3 Power (mW) | <30 | <30 | <30 |
| Active Idle Power (mW) | <150 | <150 | <150 |
| Active Read Power (mW)[12] | <5,500 | <5,500 | <5,500 |
| Advanced Features | Hardware-based AES 256-bit encryption[13] Power-loss protection (data at rest) RAIN & S.M.A.R.T. Power-loss signal support TCG Opal 2.01, TCG Pyrite 2.01 Micron Storage Executive management tool | | |

| Micron 2650 NVMe SSD | | | |
|---|---|---|---|
| Category | Everyday use for PCs and notebooks | | |
| Model | Micron 2650 SSD | | |
| Form factor | M.2 (22 x 30mm, 22 x 42mm, 22 x 80mm) | | |
| Interface | PCIe Gen4, NVMe 1.4c | | |
| Capacities[7] | 256GB | 512GB | 1TB |
| Sequential read (MB/s)[8] | 5,000 | 7,000 | 7, 000 |
| Sequential write (MB/s)[8] | 2,500 | 4,800 | 6,000 |
| Random read (KIOPS)[9] | 370 | 740 | 1,000 |
| Random write (KIOPS)[9] | 500 | 1,000 | 1,000 |
| Read latency (TYP)[10] | 50µs | 50µs | 50µs |
| Write latency (TYP)[10] | 12µs | 12µs | 12µs |
| Endurance (TBW) | 200TB | 300TB | 600TB |
| MTTF (million hours) | 2 | 2 | 2 |
| Sleep/PS4 power (mW) | <2.5 | <2.5 | <2.5 |
| Active idle power (mW) | <150 | <150 | <150 |
| PCIe Gen4 active read power (mW) | <6,100 | <6,100 | <6,100 |

**Advanced features**
Micron 3D 276-layer TLC NAND

150. The Micron SSDs include, *inter alia*, Micron's 232-Layer NAND memory devices with N58R, B57T, and/or B58R die and Micron's 276-Layer NAND memory devices with B68S die and other memory chips that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes. The B57T, B58R, N58R, B68S dies are 3D NAND dies manufactured by Micron. *See, e.g.*, Ex. 50.

151. The Micron 232L and 276L Accused Products include a film stack. *See, e.g.*, Ex. 49 (Micron® 2550 NVMe™ SSD Technical Brief) ("Micron's advanced 232-layer NAND features the world's first six-plane production TLC NAND — the most planes per die of any NAND flash available. When combined with an independent wordline on each of these six planes*,* sequential and random input/output operations are improved compared to previous generations of NAND."); Ex. 51 (Micron G8 NAND infographic); Ex. 52 (Micron G9 NAND infographic).



152.    On information and belief, the 232L and 276L Accused Products include conductive layers and first dielectric layers alternately stacked on a substrate in a first direction perpendicular to the substrate.  Moreover, the 232L and 2376L Accursed Products include a staircase structure extending in a second direction parallel to the substrate; and a dividing wall extending in the second direction and located adjacent to the staircase structure.  In the 232L and 276L Accused Products, a gate line slit ("GLS") disposed in the dividing wall, wherein the GLS penetrates through the film stack in the first direction and extends in the second direction.  Further, in the 232L and 276L Accused Products, a first barrier layer is disposed on the staircase structure, and a second barrier layer is disposed on the first barrier layer in a first region of the staircase structure, wherein the second barrier layer, different from the first barrier layer, is distant from the GLS in a third direction parallel to the substrate and perpendicular to the second direction.

153.    Accordingly, for at least these reasons, the 232L and 276L Accused Products infringe at least claim 1 of the '767 patent.  The 232L and 276L Accused Products are non-limiting examples identified based on publicly available information, and YMTC reserves the right to identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

154.    Defendants have been aware of the '767 patent since at least the filing date of this Complaint.

155.    Defendants actively induced and are actively inducing infringement of one or more claims of the '767 patent, in violation of 35 U.S.C. § 271(b), by inducing others to directly infringe the '767 patent, at least by using the Accused Products.  Defendants' customers and end-users of the Accused Products directly infringe one or more claims of the '767 patent.

156.    Defendants knowingly induce infringement of one or more claims of the '767 patent, including, for example, Claim 1 of the '767 patent, by manufacturers, customers, and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

157.    For example, Micron advertises its 232L Accused Products through its website.  Ex. 53.  Micron emphasises that its "first-to-market 232-layer technology represents Micron's sixth generation of NAND going into high-volume manufacturing."  *Id*.  Further, "[t]he breakthrough high layer count, along with CuA technology, allows us to deliver huge storage capacity up to 1 terabit per chip on a very small footprint" and provides a bit density per area on the 232-layer "over 45% higher than that for the previous 176-layer generation, an amazing increase in capability!"  *Id*.  Micron provides an infographic on the 232L Accused Products and refer to these products as "[t]he foundation for a new wave of end-to-end technology innovation."  Ex. 51.

158.    As another example, Avnet advertises Micron's 232L Accused Products through its website.  Ex. 54.  For instance, Avnet emphasized the "Key features," "Applications," and benefits

of the Micron 2550 NVMe SSD products, including their use in "Industrial PC, Client PC, Robotics, Avionics, and POS." *Id*.

159.    Additionally, Micron advertises its 276L Accused Products through its website.  Ex. 55.  According to Micron, the G9 NAND flash memory supports "[h]igh-performance storage for [customers'] PC and mobile devices, automobiles, data centers and the AI-enabled cloud."  *Id*. at 1.  Micron highlights that its 2650 SSD products' "key benefits," including incorporating the "9th-generation [G9] 3D NAND," which is an "[i]ndustry-leading NAND" that "brings technological breakthroughs that help improve user experience and SSD performance."  Ex. 47 (Micron 2650 NVMe SSD).  Among other benefits, The Micron 2650 SSD offers "Up to 70% better sequential read," "Up to 103% better sequential write," "Up to 156% better random read," and "Up to 85% better random write."  *Id*.  Micron further emphases that its G9 NAND "delivers industry leading I/O speeds up to 3.6 GB/s and up to a 50% faster data transfer rate to meet the high throughput needs of today's PC platform."  Ex. 43.

160.    Defendants instruct manufacturers, customers, and end users, at least through its technical, marketing, promotional, and instructional materials, to use the infringing Accused Products, including as described in detail above.

161.    Defendants contributed and are contributing to infringement of one or more claims of the '767 patent, in violation of 35 U.S.C. § 271(c), by Defendants' customers and end-users of the Accused Products.

162.    The Accused Products are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '767 patent, including for example Claim 1 of the '767 patent.  For example, the Accused Products incorporate GLS disposed in the dividing wall, wherein the GLS penetrates through the film stack in the first

direction and extends in the second direction; and the second barrier layer different from the first barrier layer is distant from the GLS in a third direction parallel to the substrate and perpendicular to the second direction.  These features constitute a material part of the invention of one or more of the claims of the '767 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

163.    Further, Micron instructs its agent Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

164.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

165.    Defendants' infringement of the '767 patent is without license or other authorization.

166.    Because Defendants had knowledge of the '767 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

167.    Defendants' continued infringement of the '767 patent has damaged and will continue to damage YMTC.

168.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '767 patent.  Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

169.    This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 12,075,621

170.    YMTC restates and incorporates by reference the allegations made in Paragraphs 3-169 of the Complaint above.

171.    Defendants have infringed, and will continue to infringe, one or more claims of the '621 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including at least certain 276L Accused Products and products that incorporate these NAND flash devices (for example, Micron 2650 SSD with NVMe).  Ex. 47.  By way of example, the Accused Products include 276L products with the part or die name or number B68S and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products.  *See* Ex. 48 (Micron B68S 2yyL (G9) 1 Tb TLC 3D NAND Full Process Essentials).

172.    The 276L Accused Products infringe one or more claims of the '621 patent.  For example, Claim 1 of the '621 patent recites:

1. A three-dimensional (3D) memory device, comprising:

a doped semiconductor layer;

a stack structure comprising interleaved conductive layers and dielectric layers formed on the doped semiconductor layer, the conductive layers comprising a plurality of word lines, and a drain select gate line; and

a channel structure extending through the stack structure along a first direction and in contact with the doped semiconductor layer, the channel structure comprising a semiconductor channel, and a memory film over the semiconductor channel,

wherein the drain select gate line is in direct contact with the semiconductor channel, each of the plurality of word lines is in direct contact with the memory film, and the drain select gate line and the plurality of word lines comprise a same material.

'621 Pat. Cl. 1.

173.    Micron's 276L Accused Products include each and every claim limitation of claim 1 of the '621 patent.  By way of example, each of the 276L Accused Products constitutes a three-dimensional (3D) memory device, including, *e.g.*, Micron's 2650 SSD with NVMe.  Ex. 47 (Micron® 2650 NVMe™ SSD Product Brief).

| Micron 2650 NVMe SSD | | | |
|---|---|---|---|
| Category | Everyday use for PCs and notebooks | | |
| Model | Micron 2650 SSD | | |
| Form factor | M.2 (22 x 30mm, 22 x 42mm, 22 x 80mm) | | |
| Interface | PCIe Gen4, NVMe 1.4c | | |
| Capacities[7] | 256GB | 512GB | 1TB |
| Sequential read (MB/s)[8] | 5,000 | 7,000 | 7, 000 |
| Sequential write (MB/s)[8] | 2,500 | 4,800 | 6,000 |
| Random read (KIOPS)[9] | 370 | 740 | 1,000 |
| Random write (KIOPS)[9] | 500 | 1,000 | 1,000 |
| Read latency (TYP)[10] | 50µs | 50µs | 50µs |
| Write latency (TYP)[10] | 12µs | 12µs | 12µs |
| Endurance (TBW) | 200TB | 300TB | 600TB |
| MTTF (million hours) | 2 | 2 | 2 |
| Sleep/PS4 power (mW) | <2.5 | <2.5 | <2.5 |
| Active idle power (mW) | <150 | <150 | <150 |
| PCIe Gen4 active read power (mW) | <6,100 | <6,100 | <6,100 |

**Advanced features**
Micron 3D 276-layer TLC NAND
Hardware-based AES 256-bit encryption[11]
Power-loss protection (data at rest)
Host-controlled thermal management
Performance enhancing accelerated caching
Thermal S.M.A.R.T. via SMBus
Basic management commands (BMC)
Firmware activate without reset
Sanitize block and crypto erase
Power-loss signal support
TCG Opal 2.02, TCG Pyrite 2.01
Micron Storage Executive SSD management tool

174.    The Micron SSDs include, *inter alia*, products with the part or die name or number B68S die and other memory chips (and memory products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes.  Micron's 276-Layer NAND memory chips and Micron products containing the same, including at least products with die marking B68S.  The B68S die is a 3D NAND die manufactured by Micron and configured to perform programming method on the

memory array (memory device) of B68S die. *See* Ex. 56 (Micron 3D NAND White Paper) ("3D NAND flash storage chips are composed of storage cells divided into blocks and planes. The cells have wordlines connected to allow the application of a voltage. Applying voltage to a cell creates operation known as the NAND read-and-write program functions. The more cells on a NAND chip, the larger the storage capacity."); *see also* Ex. 57 (Micron G9 NAND infographic).

175.    The Micron 276L Accused Products are semiconductor devices that include, *e.g.*, a doped semiconductor layer, a stack structure, and a channel structure extending through the stack structure.  *See, e.g.*, Ex. 47 (Micron® 2650 NVMe™ SSD Product Brief); *see also* Ex. 52 (Micron G9 NAND – The World's Fastest NAND) (showing structure of the 276L Accused Products, stating: "We put a lot of . . . focus into compressing the array in an XY Direction so you get more pillars, more memory cells per unit area . . . .").



176.    On information and belief, the 276L Accused Products include a stack structure that includes interleaved conductive layers and dielectric layers formed on the doped semiconductor

layer, the conductive layers comprising a plurality of word lines, and a drain select gate line.  *See e.g.*, *id.*  Moreover, the channel structure extends through the stack structure along a first direction and is in contact with the doped semiconductor layer, and the channel structure includes semiconductor channel, and a memory film over the semiconductor channel.  Moreover, on information and belief, the 276L Accused Products include a drain select gate line is in direct contact with the semiconductor channel.  Further, each of the plurality of word lines is in direct contact with the memory film, and the drain select gate line and the plurality of word lines include a same material.

177.    Accordingly, the 276L Accused Products infringe at least Claim 1 of the '621 patent. The 276L Accused Products are non-limiting examples identified based on publicly available information, and YMTC reserves the right to identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

178.    Defendants have been aware of the '621 patent since at least the filing date of this Complaint.

179.    Defendants actively induced and are actively inducing infringement of one or more claims of the '621 patent, in violation of 35 U.S.C. § 271(b) by inducing others to directly infringe the '621 patent, at least by using the Accused Products.  Defendants' customers and end-users of the Accused Products directly infringe one or more claims of the '250 patent.

180.    Defendants knowingly induce infringement of one or more claims of the '621 patent, including for example Claim 1 of the '621 patent, by manufacturers, customers, and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making,

selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

181.    For example, Micron advertises its 276L Accused Products through its website.  Ex. 55.  According to Micron, the G9 NAND flash memory supports "[h]igh-performance storage for [customers'] PC and mobile devices, automobiles, data centers and the AI-enabled cloud."  *Id.*  Micron emphases that its "Micron is the first to ship the industry's ninth-generation (G9) 3D NAND in a production SSD.  This innovative G9 NAND helps ensure that the Micron® 2650 SSD provides a best-in-class user experience for everyday computing with performance that beats competitive client SSDs."  Ex. 47.  Further, Micron claims that its "[i]ndustry-leading six-plane TLC NAND has the most planes per die of any TLC flash to help improve parallelism and simultaneous read/write commands support."  *Id.*  Among other benefits, The Micron 2650 SSD offers "Up to 70% better sequential read," "Up to 103% better sequential write," "Up to 156% better random read," and "Up to 85% better random write."  *Id.*  Micron further emphases that its G9 NAND "delivers industry leading I/O speeds up to 3.6 GB/s and up to a 50% faster data transfer rate to meet the high throughput needs of today's PC platforms."  Ex. 43.

182.    Defendants instruct manufacturers, customers, and end users, at least through its technical, marketing, promotional, and instructional materials, to use the infringing Accused Products, including as described in detail above.

183.    Defendants contributed and are contributing to infringement of one or more claims of the '621 patent, in violation of 35 U.S.C. § 271(c), by Defendants' customers and end-users of the Accused Products.

184.    The Accused Products are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '621 patent,

including for example claim 1 of the '621 patent. For example, the Accused Products include a memory device with a channel structure extending through the stack structure along a first direction and in contact with the doped semiconductor layer, the channel structure comprising a semiconductor channel and a memory film over the semiconductor channel, and the Accused Products further include a drain select gate line in direct contact with the semiconductor channel, each of the plurality of word lines is in direct contact with the memory film, and the drain select gate line and the plurality of word lines comprise a same material. These features constitute a material part of the invention of one or more of the claims of the '621 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

185.    Further, Micron instructs its agent Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

186.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

187.    Defendants' infringement of the '621 patent is without license or other authorization.

188.    Because Defendants had knowledge of the '621 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

189.    Defendants' continued infringement of the '621 patent has damaged and will continue to damage YMTC.

190.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '621 patent. Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no

adequate remedy at law.  Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

191.    This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 12,232,313

192.    YMTC restates and incorporates by reference the allegations made in Paragraphs 3-191 of the Complaint above.

193.    Defendants have infringed, and will continue to infringe, one or more claims of the '313 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including at least certain 232L and 276L Accused Products and products that incorporate these NAND flash devices (for example, Micron 2550 NVMe SSD and 2650 NVMe SSD).  *See* Ex. 42 (Micron 2550 SSD); Ex. 43 (Micron 2650 SSD).

194.    By way of example, the Accused Products include 232L products with the part or die name or number B57T, N58R, B58R, and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products. *See* Ex. 44 (Micron N58R 232L QLC NAND); Ex. 45 (Micron B58R 232L TLC NAND); Ex. 46 (Micron B57T 232L TLC NAND).  As another example, the Accused Products include 276L Accused Products and products that incorporate these NAND flash devices, including 276L products with the part or die name or number B68S and other memory chips (and products containing the same) that have the same or similar structures, features, or functionalities and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products.  *See* Ex. 47 (Micron 2650 SSD with NVMe technical brief); Ex. 48 (Micron B68S 2yyL (G9) TLC 3D NAND).

195.    The Accused Products infringe one or more claims of the '313 patent.  For example, Claim 1 of the '313 patent recites:

1. A three-dimensional (3D) memory device, comprising:

a memory array structure comprising a first memory array structure and a second memory array structure;

a staircase structure between the first memory array structure and the second memory array structure in a first lateral direction, the staircase structure comprising a first staircase zone and a second staircase zone; and

a first bridge structure between the first staircase zone and the second staircase zone in a second lateral direction perpendicular to the first lateral direction, the first bridge structure having a first top surface that is nominally flat;

a second bridge structure between the first staircase zone and the second staircase zone in the second lateral direction, the second bridge structure having a second top surface that is nominally flat,

wherein the first bridge structure and the second bridge structure are separated by a gate line slit structure,

wherein each of the first staircase zone and the second staircase zone comprises:

first sub-staircases and second sub-staircases arranged alternately, each of the first sub-staircases comprising ascending stairs at different depths, each of the second sub-staircases comprising descending stairs at different depths; and

at least one stair in each of the first sub-staircases and the second sub-staircases is connected to the first memory array structure and the second memory array structure through the at least one of the first bridge structure and the second bridge structure.

'313 Pat. Cl. 1.

196.    Micron's 232L and 276L Accused Products practice each and every claim limitation of Claim 1 of the '313 patent.

197. By way of example, each of the 232L and 276L Accused Products constitutes a memory device, including, *e.g.*, Micron's 2550 NVMe SSD and 2650 NVMe SSD. Ex. 49 (Micron® 2550 NVMe™ SSD Technical Brief); Ex. 47 (Micron 2650 NVMe SSD).

| Micron® 2550 NVMe SSD | | | |
|---|---|---|---|
| Category | PCIe Gen4 PCs and Notebooks | | |
| Model | Micron 2550 NVMe SSD | | |
| Form Factor (mm) | M.2 (22x30mm, 22x42mm, 22x80mm) | | |
| Interface | PCIe Gen4, NVMe 1.4 | | |
| Capacities[7] | 256GB[8] | 512GB | 1TB |
| Sequential Read (MB/s)[9] | 4,500 | 5,000 | 5,000 |
| Sequential Write (MB/s) | 2,000 | 4,000 | 4,000 |
| Random Read (IOPS)[10] | 380K | 500K | 550K |
| Random Write (IOPS) | 400K | 600K | 600K |
| Read Latency (TYP)[11] | 50µs | 50µs | 50µs |
| Write Latency (TYP) | 12µs | 12µs | 12µs |
| Endurance (TBW) | 150TB | 300TB | 600TB |
| MTTF (Million Hours) | 2 | 2 | 2 |
| Sleep/PS4 Power (mW) | <2.5 | <2.5 | <2.5 |
| Slumber/PS3 Power (mW) | <30 | <30 | <30 |
| Active Idle Power (mW) | <150 | <150 | <150 |
| Active Read Power (mW)[12] | <5,500 | <5,500 | <5,500 |
| Advanced Features | Hardware-based AES 256-bit encryption[13] Power-loss protection (data at rest) RAIN & S.M.A.R.T. Power-loss signal support TCG Opal 2.01, TCG Pyrite 2.01 Micron Storage Executive management tool | | |

| Micron 2650 NVMe SSD | | | |
|---|---|---|---|
| Category | Everyday use for PCs and notebooks | | |
| Model | Micron 2650 SSD | | |
| Form factor | M.2 (22 x 30mm, 22 x 42mm, 22 x 80mm) | | |
| Interface | PCIe Gen4, NVMe 1.4c | | |
| Capacities[7] | 256GB | 512GB | 1TB |
| Sequential read (MB/s)[8] | 5,000 | 7,000 | 7,000 |
| Sequential write (MB/s)[8] | 2,500 | 4,800 | 6,000 |
| Random read (KIOPS)[9] | 370 | 740 | 1,000 |
| Random write (KIOPS)[9] | 500 | 1,000 | 1,000 |
| Read latency (TYP)[10] | 50µs | 50µs | 50µs |
| Write latency (TYP)[10] | 12µs | 12µs | 12µs |
| Endurance (TBW) | 200TB | 300TB | 600TB |
| MTTF (million hours) | 2 | 2 | 2 |
| Sleep/PS4 power (mW) | <2.5 | <2.5 | <2.5 |
| Active idle power (mW) | <150 | <150 | <150 |
| PCIe Gen4 active read power (mW) | <6,100 | <6,100 | <6,100 |
| Advanced features | Micron 3D 276-layer TLC NAND | | |

198. The Micron SSDs include, *inter alia*, Micron's 232-Layer NAND memory devices with N58R, B57T, and/or B58R die and Micron's 276-Layer NAND memory devices with B68S die and other memory chips that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes. The B57T, B58R, N58R, B68S dies are 3D NAND dies manufactured by Micron. *See, e.g.*, Ex. 50 (Micron SpecTek Buyers Guide); Ex. 56 (Micron 3D NAND White Paper).

199. On information and belief, the 232L and 276L Accused Products are memory devices that include two memory array structures with a staircase structure between them in a first lateral direction, where the staircase structure further comprises first and second staircase zones. On information and belief, the 232L and 276L Accused Products further include a first bridge structure between the first and second staircase zones in a second lateral direction perpendicular to the first lateral direction, and the top surface of the first bridge structure is flat. On information

and belief, the 232L and 276L Accused Products further include a second bridge structure between the first and second staircase zones in the second lateral direction, and the top surface of the second bridge structure is flat.  On information and belief, a GLS structure is disposed between the first and second bridge structures.

200.    On information and belief, the first and second staircase zones of the 232L and 276L Accused Products further comprise first sub-staircases and second sub-staircases arranged alternatively; the first sub-staircase has steps extending in the ascending direction and the second sub-staircase has steps extending in the descending direction.  On information and belief, the steps of the first sub-staircase have different depths and the steps of the second sub-staircase have different depths.  On information and belief, at least one stair in the first and the second sub-staircases is connected to the first and second memory structures through the first and second bridge structures.

201.    Accordingly, for at least these reasons, the 232L and 276L Accused Products infringe at least Claim 1 of the '313 patent.  The 232L and 276L Accused Products are non-limiting examples identified based on publicly available information, and YMTC reserves the right to identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

202.    Defendants have been aware of the '313 patent since at least the filing date of this Complaint.

203.    Defendants actively induced and are actively inducing infringement of one or more claims of the '313 patent, in violation of 35 U.S.C. § 271(b), by inducing others to directly infringe the '313 patent, at least by using the Accused Products.  Defendants' customers and end-users of the Accused Products directly infringe one or more claims of the '313 patent.

204.    Defendants knowingly induce infringement of one or more claims of the '313 patent, including for example Claim 1 of the '313 patent, by manufacturers, customers, and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

205.    For example, Micron advertises its 232L Accused Products through its website.  Ex. 53.  Micron emphases that its "first-to-market 232-layer technology represents Micron's sixth generation of NAND going into high-volume manufacturing." *Id*.  Further, "[t]he breakthrough high layer count, along with CuA technology, allows us to deliver huge storage capacity up to 1 terabit per chip on a very small footprint" and provides a bit density per area on the 232-layer "over 45% higher than that for the previous 176-layer generation, an amazing increase in capability!" *Id*.  Micron provides an infographic on the 232L Accused Products and refer to these products as "[t]he foundation for a new wave of end-to-end technology innovation."  Ex. 51.

206.    As another example, Avnet advertises Micron's 232L Accused Products through its website.  Ex. 54.  For instance, Avnet emphasized the "Key features," "Applications," and benefits of the Micron 2550 NVMe SSD products, including their use in "Industrial PC, Client PC, Robotics, Avionics, and POS."  *Id*.

207.    Additionally, Micron advertises its 276L Accused Products through its website.  Ex. 55.  According to Micron, the G9 NAND flash memory supports "[h]igh-performance storage for [customers'] PC and mobile devices, automobiles, data centers and the AI-enabled cloud."  *Id*. at 1.  Micron highlights that its 2650 SSD products' "key benefits," including incorporating the "9th-generation [G9] 3D NAND," which is an "[i]ndustry-leading NAND" that "brings technological

breakthroughs that help improve user experience and SSD performance." Ex. 47 (Micron 2650 NVMe SSD). Among other benefits, The Micron 2650 SSD offers "Up to 70% better sequential read," "Up to 103% better sequential write," "Up to 156% better random read," and "Up to 85% better random write." *Id*. Micron further emphases that its G9 NAND "delivers industry leading I/O speeds up to 3.6 GB/s and up to a 50% faster data transfer rate to meet the high throughput needs of today's PC platform." Ex. 43.

208.    Defendants instruct manufacturers, customers, and end users, at least through its technical, marketing, promotional, and instructional materials, to use the infringing Accused Products, including as described in detail above.

209.    Defendants contributed and are contributing to infringement of one or more claims of the '313 patent, in violation of 35 U.S.C. § 271(c), by Defendants' customers and end-users of the Accused Products.

210.    The Accused Products are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '464 patent, including for example Claim 1 of the '464 patent. For instance, the Accused Products contain 3D NAND device with a staircase structure in an intermediate of the memory array structure where the staircase structure is divided by zones and connected to the memory array structure through a bridge structure. These features constitute a material part of the invention of one or more of the claims of the '313 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

211.    Further, Micron instructs its agent Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

212.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

213.    Defendants' infringement of the '313 patent is without license or other authorization.

214.    Because Defendants had knowledge of the '313 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

215.    Defendants' continued infringement of the '313 patent has damaged and will continue to damage YMTC.

216.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '313 patent. Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

217.    This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 12,266,403

218.    YMTC restates and incorporates by reference the allegations made in Paragraphs 3-217 of the Complaint above.

219.    Defendants have infringed, and will continue to infringe, one or more claims of the '403 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including at least certain 276L Accused Products and products that incorporate these NAND flash devices (for example, Micron 2650 NVMe SSD incorporating Micron's ninth-generation 3D NAND, Micron 9650, Micron 6600 ION, and Micron 7600), including products

with the part or die name or number B68S and other memory chips (and memory products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products. *See, e.g.*, Ex. 43 (Micron 2650 SSD); Ex. 47 (Micron 2650 SSD Technical Brief); Ex. 58 (Micron press release announcing volume production of Ninth-Generation Nand Flash Technology)[35]; Ex. 59 ("Micron G9 NAND based SSDs Set the pace for AI and Cloud").[36]

220.    Defendants also have infringed, and will continue to infringe under 35 U.S.C. § 271(g) by unlawfully importing into the United States or offering to sell, selling, or using within the United States the Accused Products, including at least certain 276L Accused Products and products that incorporate these NAND flash devices, which are made by a process that infringes one or more claims of the '403 patent

221.    The Accused Products infringe one or more claims of the '403 patent.  For example, claim 1 of the '403 patent recites:

> 1. A method for forming a three-dimensional (3D) memory device, comprising:
>
> forming a first dielectric stack on a substrate, wherein the first dielectric stack comprises a first dielectric layer and a second dielectric layer alternatingly stacked in a first direction perpendicular to the substrate;
>
> forming a second dielectric stack on the first dielectric stack, wherein the second dielectric stack comprises a third dielectric layer and a fourth dielectric layer stacked in the first direction;
>
> forming an etch-stop layer on the second dielectric stack:

---

[35]    https://investors.micron.com/news-releases/news-release-details/micron-announces-volume-production-ninth-generation-nand-flash.

[36]    https://www.micron.com/about/blog/storage/ssd/micron-g9-nand-based-ssds-set-the-pace-for-ai-and-cloud.

forming a gate line slit (GLS) opening through the etch-stop layer, the second dielectric stack and the first dielectric stack; and

replacing the fourth dielectric layer and the second dielectric layer through the GLS opening with conductive layers to form a top select gate (TSG) film stack and a film stack of alternating conductive and dielectric layers, respectively.

'403 Pat. cl. 1.

222.    Micron's 276L Accused Products include each and every claim limitation of claim 1 of the '403 patent.  By way of example, each of the 276L Accused Products includes a 3D memory device, including, *e.g.*, Micron's 2650 SSD with NVMe, which incorporates Micron G9 3D NAND.  Ex. 47 (Micron® 2650 NVMe™ SSD Product Brief); *see also* Ex. 52 (Micron G9 NAND – The World's Fastest NAND) (showing structure of the 276L Accused Products, stating: "We put a lot of . . . focus into compressing the array in an XY Direction so you get more pillars, more memory cells per unit area . . . .").

223.    On information and belief, the 3D NAND device incorporated in Micron's 276L Accused Products are manufactured using Micron's 3D NAND Replacement Gate Technology, including as disclosed in Micron's technical brief.  Ex. 56 (Micron Transitions to Next-Generation 3D NAND Replacement-Gate Technology).

224.    On information and belief, Micron's 276L Accused Products include memory dies that comprise a dielectric stack on a substrate where the dielectric stack contains a first dielectric layer (e.g. SiO layer, which can serve as an insulating layer) and a second dielectric layer (e.g. SiN layer, which can serve as a sacrificial layer) that are stacked alternatively in a first direction perpendicular to the substrate, such as shown below, Ex. 52:



225.     On information and belief, the manufacturing process of Micron's 276L Accused Products includes forming each component mentioned above.

226.     On information and belief, Micron's 276L Accused Products contains a second dielectric stack that is disposed on the first dielectric stack; the second dielectric stack contains a third dielectric layer (e.g. formed by SiO layer, which can serve as an insulating layer) and a fourth dielectric layer (e.g. formed by SiN layers, which can serve as a sacrificial layer) which are stacked alternatively in a first direction.  On information and belief, Micron's 276L Accused Products further contains an etch-stop layer disposed on the top of the second dielectric stack, which is formed by SiN layers.  On information and belief, the manufacturing process of Micron's 276L Accused Products requires forming each component mentioned above.

227.     On information and belief, Micron's 276L Accused Products further contains a GLS formed by SiO layer and Si&Ge layer through the etch-stop layer, the second dielectric stack, and the first dielectric stack.  To form such GLS, on information and belief, the manufacturing process

of Micron's 276L Accused Products requires forming a GLS opening by a suitable etching process and then filling a GLS isolation layer (e.g. SiO layer) and a second filling layer (such as Si&Ge layer) on an inner wall of the GLS opening. The GLS opening is also formed through the etch-stop layer, the second dielectric stack, and the first dielectric stack.

228.    On information and belief, the manufacturing process of Micron's 276L Accused Products further includes replacing the second and fourth dielectric layers (e.g. SiN formed sacrificial layers) through the GLS opening with conductive layers (e.g. molybdenum/Mo). The conductive layer (e.g. Mo) and the dielectric layer (e.g. SiO insulating layer) thus form a top select gate ("TSG") film stack and a film stack under the TSG film stack.

229.    Accordingly, for at least these reasons, the 276L Accused Products, including the method for manufacturing the same, infringe at least Claim 1 of the '403 patent. The 276L Accused Products and the manufacturing process for them are non-limiting examples identified based on publicly available information, and YMTC reserves the right to identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

230.    Defendants have been aware of the '403 patent since at least the filing date of this Complaint.

231.    Defendants have infringed and continue to infringe under 35 U.S.C. § 271(g) by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States during the term of the '403 patent. Defendant have practiced the patented process; or own or control, or are owned or controlled by the person who has practiced the patented process. Defendants sell the Accused Products to customers, including customers in this District.

232.     Defendants actively induced and are actively inducing infringement of one or more claims of the '403 patent, in violation of 35 U.S.C. § 271(b), by inducing others to directly infringe the '403 patent, at least by manufacturing and importing into the United States the Accused Products.

233.     Defendants knowingly induce infringement of one or more claims of the '403 patent, including for example Claim 1 of the '403 patent, with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

234.     For example, Micron advertises its 276L Accused Products through its website.  Ex. 55.  According to Micron, the G9 NAND flash memory supports "[h]igh-performance storage for [customers'] PC and mobile devices, automobiles, data centers and the AI-enabled cloud."  *Id.* at 1.  Micron highlights that its 2650 SSD products' "key benefits," including incorporating the "9th-generation [G9] 3D NAND," which is an "[i]ndustry-leading NAND" that "brings technological breakthroughs that help improve user experience and SSD performance."  Ex. 47 (Micron 2650 NVMe SSD).  Among other benefits, The Micron 2650 SSD offers "Up to 70% better sequential read," "Up to 103% better sequential write," "Up to 156% better random read," and "Up to 85% better random write."  *Id.*  Micron further emphases that its G9 NAND "delivers industry leading I/O speeds up to 3.6 GB/s and up to a 50% faster data transfer rate to meet the high throughput needs of today's PC platform."  Ex. 43.

235.     In violation of 35 U.S.C. § 271(c), Defendants contributed and are contributing to infringement of one or more claims of the '403 patent including at least by manufacturers of the Accused Products.

236.    Defendants' manufacturing process technology and the Accused Products have no substantial uses other than ones that infringe one or more claims of the '403 patent, including for example Claim 1 of the '403 patent.  For example, the manufacturing process of the Accused Products includes forming an etch-stop layer disposed on TSG film stack's outermost side away from the substrate where the etch-stop layer functions as an etch stop for forming the BL contact opening and the GLS trench of the 3D NAND memory device.  These constitute a material part of the invention of one or more of the claims of the '403 patent and are not suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

237.    Further, Micron instructs its agent Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

238.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

239.    Defendants' infringement of the '403 patent is without license or other authorization.

240.    Because Defendants had knowledge of the '403 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

241.    Defendants' continued infringement of the '403 patent has damaged and will continue to damage YMTC.

242.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '403 patent.  Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

243.    This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 12,254,925

244.    YMTC restates and incorporates by reference the allegations made in Paragraphs 3-243 of the Complaint above.

245.    Defendants have infringed, and will continue to infringe, one or more claims of the '925 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including at least certain 176L Accused Products and products that incorporate these NAND flash devices (for example, Micron 2400 SSD with NVMe, Micron 2450 NVMe SSD, Micron 5400 SATA SSD and UFS 3.1, eMMC 5.1 micro SD).  *See, e.g.*, Ex. 60 (Micron 2400 NVMe SSD);[37] Ex. 61 (Micron 2400 SSD With NVMe technical brief);[38] Ex. 62 (Micron 2450 SSD with NVMe technical brief).[39] By way of example, the Accused Products include Micron 176L 3D NAND products with the part or die name or number N48R or B47R, and other memory chips (and memory products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary products.

246.    The Accused Products infringe one or more claims of the '925 patent.  For example, Claim 1 of the '925 patent recites:

---

[37]    https://www.micron.com/products/storage/ssd/client-ssd/2400-ssd.

[38]    https://assets.micron.com/adobe/assets/urn:aaid:aem:2573ba72-0b2a-4aa6-9a93-c75035939bc8/renditions/original/as/2400-ssd-product-brief.pdf.

[39]    https://assets.micron.com/adobe/assets/urn:aaid:aem:702eaa4d-372c-4e30-b358-989a2be1f0a6/renditions/original/as/micron-2450-ssd-product-brief.pdf.

1. A method of programing a memory device comprising a cell, the method comprising:

applying a first program pulse to the cell;

applying middle program pulses to the cell after the application of the first program pulse, comprising applying a first middle program pulse to the cell, a pulse width of the first middle program pulse being wider than a pulse width of the first program pulse; and

applying a last program pulse to the cell after the application of the middle program pulses, wherein a pulse width of the last program pulse is wider than a pulse width of each of the middle program pulses and the first program pulse.

'925 Pat. Cl. 1.

247.    By way of example, Defendants and its customers practice each and every claim limitation of Claim 1 of the '925 patent.

248.    Micron's 176L Accused Products, for example, Micron 2400 NVMe SSD and 2450 NVMe SSD, each constitutes a memory device:

| Micron® 2400 SSD with NVMe | | | |
|---|---|---|---|
| Category | Value PCIe Gen4 PCs and notebooks | | |
| Model | Micron 2400 SSD | | |
| Form Factor (mm) | M.2 (22x30, 22x42, 22x80) | | |
| Interface | PCIe Gen4, NVMe 1.4 | | |
| Capacities | 512GB | 1TB | 2TB |
| Sequential Read (MB/s)[11] | 4200 | 4500 | 4500 |
| Sequential Write (MB/s)[11] | 1800 | 3600 | 4000 |
| Random Read (IOPS)[11] | 400K | 600K | 600K |
| Random Write (IOPS)[11] | 400K | 650K | 700K |
| Endurance (TBW) | 150TB | 300TB | 600TB |
| MTTF (Million Hours) | 2 | 2 | 2 |
| Sleep/PS4 Power (mW) | <2.5 | <2.5 | <2.5 |
| Active Idle Power (mW) | <200 | <200 | <200 |
| Advanced Features | Hardware-based AES 256-bit encryption, RAIN and SMART, TCG Opal 2.01, TCG Pyrite 2.01, Micron Storage Executive management tool, sanitize, secure boot | | |

Ex. 61 (Micron 2400 SSD With NVMe technical brief).

| Micron™ 2450 SSD with NVMe | | | |
|---|---|---|---|
| Category | Value PCIe Gen4 PCs and Notebooks | | |
| Model | Micron 2450 SSD | | |
| Form Factor (mm) | M.2 (22 x 30, 22 x 42, 22 x 80) | | |
| Interface | PCIe Gen4, NVMe 1.4 | | |
| Capacities | 256GB | 512GB | 1TB |
| Sequential Read (MB/s)[6] | 3,500 | 3,500 | 3,500 |
| Sequential Write (MB/s)[6] | 1,600 | 3,000 | 3,000 |
| Random Read (IOPS)[7] | 190K | 380K | 450K |
| Random Write (IOPS)[7] | 400K | 500K | 500K |
| Read Latency (TYP)[8] | 50µs | 50µs | 50µs |
| Write Latency (TYP)[8] | 12µs | 12µs | 12µs |
| Endurance (TBW) | 180TB | 300TB | 600TB |
| MTTF (Million Hours) | 2 | 2 | 2 |
| Sleep/PS4 Power (mW) | <3 | <3 | <3 |
| Slumber/PS3 Power (mW) | <30 | <30 | <30 |
| Active Idle Power (mW) | <400 | <400 | <400 |
| Active Read Power (mW)[9] | <5,500 | <5,500 | <5,500 |

Ex. 62 (Micron 2450 SSD with NVMe technical brief).

249.    The Micron SSDs include, *inter alia*, products with B47R or N48R die and other memory chips (and memory products containing the same) that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes. The B47R and N48R dies are 3D NAND die manufactured by Micron and configured to perform programming method on the memory array (memory device) of N48R die.  *See* Ex. 56 (Micron 3D NAND White Paper) ("3D NAND flash storage chips are composed of storage cells divided into blocks and planes. The cells have wordlines connected to allow the application of a voltage. Applying voltage to a cell creates operations known as the NAND read-and-write program functions. The more cells on a NAND chip, the larger the storage capacity.").

250.    On information and belief, the QLC program operation for Micron's 176L Accused Products uses a two-pass/two-step 16-16 programming method (coarse step and fine step) for programming all four pages: lower page (LP), middle page (MP), upper page (UP) and top page (TP).  In the first (coarse) step, the cells in a selected wordline are programmed to coarse 16 levels. In the second (fine) step, the cells for the same selected wordline are then re-programmed to the

final 16 levels.  Fifteen verification steps (PV1_C – PV15_C) are used during the coarse program, and 15 additional steps (PV1_F – PV15_F) are used during the fine program.  The voltage step size of the incremental pulses applied during the coarse program is larger than the step size for the incremental pulses applied during the fine program.  Unselected wordlines during the QLC program and verify operations are applied with program pass voltage (PROG_PASS) and program verify pass voltage (PV_PASS), respectively.  *See, e.g.*, Ex. 63 (Akira Goda, Micron Memory Japan, Recent Progress on 3D NAND Flash Technologies (IEEE 2021)).[40]

251.    The pulse widths of the plurality of the programming voltage pulses varied.    On information and belief, the pulse width of the first middle program pulse (*e.g.* the first pulse in the intermediate waveform segment of the coarse program operation) is wider than the pulse width of the first program pulse of the coarse program operation; and the last program pulse (*e.g.* the 16th pulse of the coarse program operation) has a wider pulse width than the first middle program.

252.    Accordingly, for at least these reasons, the 176L Accused Products infringe at least Claim 1 of the '925 patent.  The 176L Accused Products are non-limiting examples identified based on publicly available information, and YMTC reserves the right to identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

253.    Defendants have been aware of the '925 patent since at least the filing date of this Complaint.

254.    Defendants actively induce and are actively inducing infringement of one or more claims of the '925 patent, in violation of 35 U.S.C. § 271(b), by inducing others to directly infringe the '925 patent, at least by using the Accused Products.  Defendants' customers and end-users of the Accused Products directly infringe one or more claims of the '925 patent.

---

[40]    https://www.mdpi.com/2079-9292/10/24/3156.

255.    Defendants knowingly induce infringement of one or more claims of the ''925 patent, including for example Claim 1 of the '925 patent, by manufacturers, customers, and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

256.    For example, Micron advertises its 176L Accused Products through its website.  Ex. 64.[41]  Micron emphases that its "176-layer NAND serves as an essential and powerful building block in technologists' toolboxes across a broad array of sectors," and provides a "25% faster read and write times," which provides "quicker booting and increased application responsiveness."  *Id*. Micron further publishes Micron White Paper regarding the technical benefits, applications, and features of the 176L Accused Products.  *See, e.g.*, Ex. 56 (Micron 3D NAND White Paper).

257.    Defendants instruct manufacturers, customers, and end users, at least through its technical, marketing, promotional, and instructional materials, to use the infringing Accused Products, including as described in detail above.

258.    Defendants contributed and are contributing to infringement of one or more claims of the '925 patent, in violation of 35 U.S.C. § 271(c), by Defendants' customers and end-users of the Accused Products.

259.    The Accused Products are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '925 patent, including for example claim 1 of the '925 patent.  For example, the Accused Products incorporate

---

[41]    https://www.micron.com/products/storage/nand-flash/176-layer-nand?srsltid=AfmBOorEtRSCOifyZtlckOb2LECNrl_oJGxNScZOv2O9ThjfKvHy3zq-.

memory dies that can be programmed with voltage pulses having different widths. These features constitute a material part of the invention of one or more of the claims of the '925 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants' contributory infringement is ongoing.

260.    Further, Micron instructs Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

261.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

262.    Defendants' infringement of the '925 patent is without license or other authorization.

263.    Because Defendants had knowledge of the '925 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

264.    Defendants' continued infringement of the '925 patent has damaged and will continue to damage YMTC.

265.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '925 patent. Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

266.    This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,707,851

267.    YMTC restates and incorporates by reference the allegations made in Paragraphs 3-266 of the Complaint above.

268.    Defendants have infringed, and will continue to infringe, one or more claims of the '851 patent under 35 U.S.C. § 271(a), *et seq.*, either literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products, including LPDDR5 and LPDDR5X Accused Products, including products that have the same or similar structures, features, or functionalities, and/or are made by the same or similar manufacturing processes, as the aforementioned exemplary product.

269.    Micron announced its mass production of the first LPDDR5 products in February 2020.  Ex. 65[42]  Micron lists at its website the part numbers for its LPDDR5 products, including, for   instance,   MT62F2G64D8ZA-018   WT:F;   MT62F768M32D2DS-020FAUT:D; MT62F512M32D1DS-020  WT:E;  MT62F1G64D4ZV-026  WT:B;  MT62F1G64D8EK-031 AAT:B;  MT62F512M16D1Y31MWC1;  MT62F1G64D4ZX-020  WT:F.   Ex.  66  (Micron LPDDR5  Part  Catalog).[43]   On  October  20,  2020,  Micron  announced  the  multi-die  package (uMCP5), a universal flash storage (UFS) multichip package with LPDDR5, were ready for mass production.  Ex. 67 (Micron News Release).[44]  Micron further lists its LPDDR5X products at its website,   including   part   numbers,   for   example,   MT62F1536M32D4JZ-O23, MT62F512M32D1DS-O23, MT62F2G64D8DL.  Ex. 68 (Micron LPDDR5X Part Catalog).[45]

270.    The Accused Products infringe one or more claims of the '851 patent.  For example, Claim 1 of the '851 patent recites:

---

[42]  https://investors.micron.com/news-releases/news-release-details/micron-delivers-worlds-first-mass-produced-low-power-ddr5-dram.

[43]   https://www.micron.com/products/memory/dram-components/lpddr5/part-catalog.

[44]  https://investors.micron.com/news-releases/news-release-details/micron-readies-worlds-first-multichip-package-lpddr5-dram-mass.

[45]  https://www.micron.com/products/memory/dram-components/lpddr5x.

1. A double data rate circuit comprising:

a clock generator, configured to receive a source clock signal to generate a pair of complementary clock signals;

a clock divider, coupled to the clock generator, and configured to generate four multiphase clock signals using only single-edge transitions of the pair of complementary clock signals, the four multiphase clock signals being successively out-of-phase by 90°; and

a multiplexer, coupled to the clock divider, and configured to multiplex multiple data bits into an output data stream by sequentially selecting and deselecting each data bit of the multiple data bits upon a first edge transition of and a second edge transition of two of the four multiphase clock signals, respectively, and outputting each selected data bit as the output data stream;

wherein the multiplexer comprises four 3-input NAND gates and one 4-input NAND gate coupled thereto;

each of the four 3-input NAND gates is configured to receive one of four multiple data bits and two of the four multiphase clock signals, start outputting the received data bit upon the first edge transition of one of the two received multiphase clock signals, and stop outputting the received data bit upon the second edge transition of another one of the two received multiphase clock signals, the two received multiphase clock signals being out-of-phase by 90°;

the 4-input NAND gate is configured to receive respective output signals from the four 3-input NAND gates to generate the output data stream; and

inputs of the 3-input NAND gates are matched in pull-up paths and pull-down paths, and inputs of the 4-input NAND gate are matched in pull-up paths and pull-down paths.

'851 Pat. Cl. 1.

271.    The LPDDR5 and LPDDR5X Accused Products practice each and every claim limitation of Claim 1 of the '851 patent.

272.    By way of example, the Micron's LPDDR5 and LPDDR5X DRAM products include a double data rate circuit.  Ex. 69 (Micron LPDDR components).[46]



273.    Micron's datasheet discloses the block diagram for its 8-die LPDDR5 and LPDDR5X DRAM.  Ex. 70 (MT62F1G64D8); Ex. 71 (LPDDR5/LPDDR5X SDRAM).[47]



---

[46]    https://www.micron.com/products/memory/dram-components/lpddr-components?srsltid=AfmBOorHrDslcLQYgJF0cmHUncnJ3HFiuNTlrhl1Rxwth_XxdS2s-Fmb.

[47]    https://datasheet4u.com/pdf-down/M/T/6/MT62F512M32D2-Micron.pdf; https://www.mouser.com/datasheet/2/671/Micron_05092023_315b_441b_y4bm_ddp_qdp_8dp_non_aut-3175604.pdf?srsltid=AfmBOoqI1REEPY-yjOzmhkKGIMWNfzxrmvaxaVDMSIz9g-N0gQgenV9g.



Y4BM LPDDR5/LPDDR5X SDRAM
Package Block Diagrams

**Eight Die, Dual Channel, Dual Rank**

Figure 4: Eight-Die, Dual-Channel, Dual-Rank Package Block Diagram



274.  On information and belief, Micron's LPDDR5 and LPDDR5X DRAM includes CK_Block circuit comprises an oscillator (or similar structure), which is configured to receive a source clock signal to generate clock signals.  Therefore, the oscillator (or similar structure) can serve as a "clock generator."

275.  On information and belief, the internal circuit structure of the oscillator must include at least one oscillation-generating circuit, which is composed of inverters connected in series or parallel.  The circuit uses a typical Even Ring Oscillator (or similar structure) which contains an even number of inverting amplifiers.  When a signal propagates through the entire ring

circuit for one full cycle, two signals with a 180-degree phase difference will meet in the circuit, generating positive feedback and reinforcing the output signal.

276.    On information and belief, the oscillator is coupled to a clock divider through an intermediate circuitry, such as a clock input circuit.  The divider includes four tristate inverters (*e.g.*, A, B, C, and D), which can generate four multi-phase clock signals.  On information and belief, the tristate inverters can be paired in two groups (*e.g.*, A and C form a group and B and D form a second group), and the clock diver can use only single-edge transitions (*e.g.*, A and C) of the pair of complementary signals to generate these multiphase clock signals.

277.    On information and belief, the multiphase clock signals generated by the clock divider in Micron's LPDDR5 and LPDDR5X Accused Products are being out of phase by 90°.

278.    On information and belief, Micron LPDDR5 and LPDDR5X Accused Products include a multiplexer coupled to the clock divider, which can multiplex data bits into an output data stream.  On information and belief, the multiplexer sequentially selects and deselects one bit from multiple data bits as the output data stream.

279.    On information and belief, the multiplexer contains four 3-input circuits (*i.e.*, the "3-input NAND gates"), where two of the inputs are multi-phase clock signals and the third input is one bit from a multi-data stream. On information and belief, the multi-phase clock signals are being out of phase by 90°.

280.    On information and belief, the multiplexer further includes an 8-input circuit with four inverters (*i.e.*, the "4-input NAND gate").  On information and belief, the 3-input NAND gates of the multiplexer are configured to generate output signals used as an input signal for the 4-input NAND gate.  The 4-input NAND gate then generates an output data stream (DQ).

281.    On information and belief, the inputs of the 3-input NAND gates are matched in pull-up paths and pull-down paths, and inputs of the 4-input NAND gate are matched in pull-up paths and pull-down paths.

282.    Accordingly, for at least these reasons, the LPDDR5 and LPDDR5X Accused Products infringe at least Claim 1 of the '851 patent.  The LPDDR5 and LPDDR5X Accused Products are non-limiting examples identified based on publicly available information, and YMTC reserves the right to identify additional infringing activities, products, and services based on information obtained, for example, during discovery.

283.    Defendants have been aware of the '851 patent since at least the filing date of this Complaint.

284.    Defendants actively induced and are actively inducing infringement of one or more claims of the '851 patent, in violation of 35 U.S.C. § 271(b), by inducing others to directly infringe the '851 patent.  Defendants' customers and end-users of the Accused Products directly infringe one or more claims of the '851 patent.

285.    For example, Micron advertises its LPDDR5 Accused Products through its website. *See* Ex. 72 (LPDDR5 memory); [48] Ex. 73 (Micron LPDDR Module). [49]  According to Micron, "LPDDR5 SDRAM addresses next-generation memory requirements for AI and 5G with a 50% increase in data access speeds and more than 20% better power efficiency compared to previous generations.  Micron LPDDR5 allows 5G smartphones and other devices to process data at peak

---

[48]    https://www.micron.com/products/memory/dram-components/lpddr5?srsltid=AfmBOopwONRgWbeic3vW99Pcp_WSXjiCJ5DCd2XZOy905PtjPCg8i6HV.

[49]    https://www.micron.com/products/memory/lpddr-modules#accordion-c7f2ef9892-item-bf736aceb5.

speeds of up to 6.4 Gb/s, which is critical for preventing 5G data bottlenecks." Ex. 72 at 1. Micron further provides technical briefs and LPDRAM portfolio for its customers, detailing "[i]deal applications," "advantages," "[f]eatures," and "[b]enefits" for its LPDDR5 Accused Products. Ex. 74 (Micron LPDRAM technical information) at 1-2.[50]

286.   Micron announces its LPDDR5X memory devices in 2022, claiming their performance and power efficiency "unlock future capabilities." Ex. 75.[51]  Micron further advertises LPDDR5X Accused Products as "designed for flagship smartphones, thin and light laptops and other mobile devices." Ex. 68.  According to Micron, LPDDR5X on LPCAMM2 modules can "scale memory speed up to 9.6 Gb/s (1.5x speed up), providing superior performance for client applications." Ex. 76 (Micron LPPDR5X technical information).[52]

287.   As another example, Avnet advertises Micron LPDDR5 Accused Products at its website. Ex. 77 (Avnet Silica: Micron LPDDR5).[53]  According to Avnet, "Micron's LPDDR5 SDRAM addresses the growing demand for higher memory performance and lower energy consumption across a wide array of markets, including automotive, client PCs and networking systems built for 5G and AI applications." *Id*. at 1. Avnet further lists in detail the key features, benefits, and applications of Micron LPDDR5 products:

---

[50]  https://assets.micron.com/adobe/assets/urn:aaid:aem:c6a15a69-cf75-4cd6-abc2-48bf58c9164e/renditions/original/as/flyer-lpdram-mobile-embedded.pdf.

[51]  https://www.micron.com/about/blog/memory/dram/lpddr5x-memory-performance-pushes-the-limits-of-whats-possible.

[52]   https://assets.micron.com/adobe/assets/urn:aaid:aem:4e076108-df95-4c2d-8785-06c30049afb5/original/as/lpddr5x-camm2-technical-brief.pdf.

[53]   https://my.avnet.com/silica/products/new-products/npi/2023/micron-lpddr5/.



288.   Similarly, Avnet advertises Micron's LPDDR5X Accused Products on its website, identifying the "Key features" and "Benefits" including for example, "enabling rapid AI inferencing at the edge." Ex. 78.[54]

289.   Defendants knowingly induce infringement of one or more claims of the '851 patent, including for example, Claim 1 of the '851 patent, by manufacturers, customers, and end-users of the Accused Products with specific intent to induce infringement, and/or with willful

---

[54]   https://my.avnet.com/silica/products/new-products/npi/2024/micron-lpddr5x/.

blindness to the possibility that its acts induce infringement, through activities relating to making, selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

290.    Defendants instruct manufacturers, customers, and end users, at least through its technical, marketing, promotional, and instructional materials, to use the infringing Accused Products, including as described in detail above.

291.    Defendants contributed and are contributing to infringement of one or more claims of the '851 patent, in violation of 35 U.S.C. § 271(c), by Defendants' customers and end-users of the Accused Products.

292.     The Accused Products are specifically designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '851 patent, including for example claim 1 of the '851 patent.  For example, the Accused Products are enabled to select and deselect the output data stream using any two of four consecutive 90-degree phase-shifted clock signals, which provides many benefits including satisfying timing requirements, decreasing a data skew, reducing the error rate, and enhancing the memory device's system performance.  These features constitute a material part of the invention of one or more of the claims of the '851 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

293.    Further, Micron instructs Avnet and/or other distributors to sell, offer to sell, and otherwise distribute the Accused Products.

294.    Avnet sells or offers to sell components of the Accused Products to Micron's customers.

295.    Defendants' infringement of the '851 patent is without license or other authorization.

296.    Because Defendants had knowledge of the '851 patent and proceeded to knowingly infringe, Defendants' infringement has been and continues to be willful.

297.    Defendants' continued infringement of the '851 patent has damaged and will continue to damage YMTC.

298.    Unless and until enjoined by this Court, Defendants will continue to directly infringe as well as induce and contribute to infringement of the '851 patent. Defendants' infringing acts are causing and will continue to cause at least YMTC irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, YMTC is entitled to a permanent injunction against further infringement.

299.    This case is exceptional, entitling YMTC to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, YMTC respectfully requests that this Court enter judgment in its favor and against Defendants and grant the following relief:

1.    A judgment declaring that Defendants have infringed and are infringing one or more claims of the Asserted Patents;

2.    An award of all damages sustained by Plaintiff as a result of Defendants' infringing activities which is no less than a reasonable royalty, including pre-judgment and post-judgment interest;

3.    A judgment declaring that Defendants' infringement is willful;

4.    An award of enhanced damages pursuant to 35 U.S.C. § 284;

5.    A permanent injunction of Defendants' infringing acts;

6.      An order finding that this case is an exceptional case under 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees, expenses, and costs in connection with this action; and

7.      Any other equitable and legal relief that this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

YMTC respectfully requests a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all claims and issues so triable.

Dated: October 6, 2025

Respectfully submitted,

_/s/ Greg Arovas by permission Andrea L. Fair_

Andrea L. Fair
Texas State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone:      (903) 757-6400
Facsimile:      (903) 757-2323
andrea@millerfairhenry.com

Greg Arovas, P.C. (_pro hac vice_ forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email: garovas@kirkland.com

F. Christopher Mizzo, P.C.  (_pro hac vice_
forthcoming)
KIRKLAND & ELLIS LLP 1301
Pennsylvania Ave NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 879-5000
Email: chris.mizzo@kirkland.com

Brandon H. Brown, P.C. (admitted in E.D.
Texas)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone:      (415) 439-1400
Facsimile:      (415) 439-1500
Email: brandon.brown@kirkland.com

Yimeng Dou, Ph.D. (admitted in E.D. Texas)
Yanan Zhao (_pro hac vice_ forthcoming)
KIRKLAND & ELLIS LLP
2049 Century Park East Suite 3700
Los Angeles, CA 90067
Telephone:      (310) 552-4240
Facsimile:      (310) 552-5900
Email: yimeng.dou@kirkland.com
Email: yanan.zhao@kirkland.com

_Attorneys for Plaintiff_
_Yangtze Memory Technologies Company, Ltd._