**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., | § § § | |
| Plaintiff, | § | |
| v. | § § | |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS LLC, AND AVNET, INC., | § § § § § | C.A. No. 2:25-cv-01010-JRG JURY TRIAL DEMANDED |
| Defendants. | § § | |

**DEFENDANTS' OPPOSED MOTION TO (1) SEVER, DISMISS, AND STAY THE
CLAIMS AGAINST MICRON TECHNOLOGY TEXAS, LLC
AND (2) TRANSFER THE REMAINDER OF THE CASE**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ....................................................................................... 2

      A.      No Party In This Suit Maintains Any Relevant Connection To Texas. .................. 2

      B.      YMTC Initiated Its Patent-Litigation Campaign Against Micron In California, Then Filed This Substantially Similar Suit In Texas. ........................... 4

      C.      Micron Filed Suit In The Northern District Of California, Seeking Coordination Of All YMTC-Micron Actions Before A Single Court. ................... 6

III.    LEGAL STANDARDS ................................................................................................ 7

IV.     ARGUMENT ............................................................................................................... 8

      A.      This Court Should Sever, Dismiss, And Stay YMTC's Claims Against Micron Texas. ..................................................................................................... 8

      B.      This Court Should Transfer YMTC's Remaining Claims To The Northern District Of California. ......................................................................................... 11

          1.      The First-To-File Rule Warrants Transfer. ............................................... 11

          2.      Independently, 28 U.S.C. § 1404(a) Warrants Transfer. .......................... 14

V.      CONCLUSION .......................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)...................................................................................19

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
  358 F.3d 337 (5th Cir. 2004) .........................................................................................8

*In re Amazon.com, Inc.*,
  No. 2022-157, 2022 WL 17688072 (Fed. Cir. Dec. 15, 2022)...............................7, 9

*AmberWave Sys. Corp. v. Intel Corp.*,
  No. 2:05-CV-321, 2005 WL 2861476 (E.D. Tex. Nov. 1, 2005)......................12, 13

*In re Apple Inc.*,
  No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ....................................20

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) .............................................................................18

*In re Apple, Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020)................................................................17, 18, 19

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964)......................................................................................................10

*Aventis Pharms. Inc. v. Teva Pharms. USA Inc.*,
  No. 2:06-CV-469, 2007 WL 2823296 (E.D. Tex. Sept. 27, 2007)..............................11, 13, 14

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) .........................................................................................8

*Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*,
  855 F.3d 681 (5th Cir. 2017) .........................................................................................9

*E-Z-EM, Inc. v. Mallinckrodt, Inc.*,
  No. 2-09-CV-124, 2010 WL 1378820 (E.D. Tex. Feb. 26, 2010)...........................14

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012)......................................................................................7

*Emrit v. Jules*,
  No. 6:23-CV-00031, 2023 WL 5207449 (S.D. Tex. July 31, 2023) .........................9

*Emrit v. Jules*,
   No. 6:23-CV-00031, 2023 WL 5963436 (S.D. Tex. Sept. 13, 2023) ........................................9

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
   737 F.3d 704 (Fed. Cir. 2013) ..................................................................................................7

*Galloway Farms, Inc. v. United States*,
   834 F.2d 998 (Fed. Cir. 1987) ..................................................................................................9

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................................................8, 15, 19

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) .......................................................................................13

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) ...............................................................................................19

*Haygood v. Dies*,
   No. 18-30866, 2023 WL 2326424 (5th Cir. Mar. 2, 2023) ......................................................9

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.*,
   66 F.3d 299 (Fed. Cir. 1995) ....................................................................................................9

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) ...........................................................................................8, 15

*Mann Mfg., Inc. v. Hortex, Inc.*,
   439 F.2d 403 (5th Cir. 1971) ..................................................................................................14

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   503 F.3d 1352 (Fed. Cir. 2007) ................................................................................................9

*Network Sys. Techs., LLC v. Samsung Elecs. Co.*,
   No. 2:22-CV-00481-JRG, 2023 WL 7649372 (E.D. Tex. Nov. 14, 2023) ..............................11

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014) ...........................................................................7, 10, 11, 13

*In re Nitro Fluids L.L.C.*,
   978 F.3d 1308 (Fed. Cir. 2020) ................................................................................................8

*Polaris Innovations Ltd. v. Dell, Inc.*,
   No. SA-16-CV-451-XR, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) ................................16

*Quad/Tech Inc. v. Q.I. Press Controls*,
   No. C 10-2243 CRB, 2010 WL 4722501 (N.D. Cal. Nov. 15, 2010) ....................................14

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*,
No. 2:22-CV-00168-JRG, 2022 WL 17417972 (E.D. Tex. Dec. 5, 2022) ............................. 14

*S.M.R Innovations LTD v. Apple Inc.*,
756 F. Supp. 3d 453 (W.D. Tex. 2024) .................................................................................. 19

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
No. 2:16-CV-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017) .................................... 11

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ............................................................................................... 20

*Save Power Ltd. v. Syntek Fin. Corp.*,
121 F.3d 947 (5th Cir. 1997) ................................................................................................ 13

*In re Seattle SpinCo, Inc.*,
817 F. App'x 987 (Fed. Cir. 2020) .......................................................................................... 7

*Shifferaw v. Emson USA*,
2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ....................................................................... 11

*SQIP, LLC v. Cambria Co., LLC*,
728 F. Supp. 3d 447 (E.D. Tex. 2024) .................................................................................. 18

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
815 F. Supp. 994 (E.D. Tex. 1993) ....................................................................................... 14

*VIP Pump Servs., LLC v. Poole*,
No. 2:24-CV-00703-JRG, 2025 WL 918440 (E.D. Tex. Mar. 26, 2025) ............................... 13

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ........................................................................................ 8, 15, 19

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ........................................................................................ 8, 17, 18

*Wyndham Assocs. v. Bintliff*,
398 F.2d 614 (2d Cir. 1968) ......................................................................................... 7, 10, 11

**Statutes**

28 U.S.C. § 1400 ....................................................................................................................... 9, 11

28 U.S.C. § 1404 ................................................................................................................. 1, 8, 11, 14

28 U.S.C. § 1406 .......................................................................................................................... 6, 7, 9

iii

**Other Authorities**

Fed. R. Civ. P. 21 ..............................................................................................................7, 20

**TABLE OF EXHIBITS**

**Lang Declaration**

| Exhibit | Description |
|---------|-------------|
| 1 | Printout from YMTC's website entitled "Globalized R&D System and Market Locations," which shows a single location in the United States, accessible through YMTC's website at https://www.ymtc.com/en/contact.html (printed on February 6, 2026) |
| 2 | Statement of Information of Yangtze Memory Technologies, Inc., filed with the California Secretary of State on July 28, 2022 |
| 3 | David Duffin's LinkedIn profile, accessible at https://www.linkedin.com/in/david-duffin-2a54678 |
| 4 | Daesik Song's LinkedIn profile, accessible at https://www.linkedin.com/in/daesik-song-a5a05221 |
| 5 | Wenxi Zhou's LinkedIn profile, accessible at https://www.linkedin.com/in/wenxi-zhou-a7913a30 |
| 6 | Google Maps results showing a 2 hour 58 minute trip from Dallas Fort Worth International Airport to the Eastern District of Texas Courthouse in Marshall, Texas, located at 100 East Houston Street Marshall, TX 75670 (printed on February 2, 2026) |
| 7 | Google Maps results showing a 32 minute trip from San Franciso International Airport to the Northern District of California Courthouse in San Francisco, California, located in the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102 (printed on February 2, 2026) |
| 8 | Google Flights search results for flights from San Franciso, California to Dallas, Texas (printed on February 2, 2026) |
| 9 | Google Flights search results for flights from Boise, Idaho to Dallas, Texas (printed on February 2, 2026) |
| 10 | Google Flights search results for flights from Boise, Idaho to San Franciso, California (printed on February 2, 2026) |
| 11 | Google Flights search results for flights from Hashimoto, Japan to Dallas, Texas (printed on February 2, 2026) |
| 12 | Google Flights search results for flights from Hashimoto, Japan to San Franciso, California (printed on February 2, 2026) |
| 13 | Google Flights search results for flights from Wuhan, China to Dallas, Texas (printed on February 2, 2026) |
| 14 | Google Flights search results for flights from Wuhan, China to San Franciso, California (printed on February 2, 2026) |
| 15 | Google Flights search results for flights from Beijing, China to Dallas, Texas (printed on February 2, 2026) |
| 16 | Google Flights search results for flights from Beijing, China to San Franciso, California (printed on February 2, 2026) |
| 17 | Google Flights search results for flights from Philadelphia, Pennsylvania to Dallas, Texas (printed on February 2, 2026) |
| 18 | Google Flights search results for flights from Philadelphia, Pennsylvania to San Franciso, California (printed on February 2, 2026) |

i

| Exhibit | Description |
|---------|-------------|
| 19 | Google Flights search results for flights from Phoenix, Arizona to Dallas, Texas (printed on February 2, 2026) |
| 20 | Google Flights search results for flights from Phoenix, Arizona to San Franciso, California (printed on February 2, 2026) |
| 21 | Navigator time-to-trial statistics for the Northern District of California for the time period from 2015 to February 3, 2026 |
| 22 | Docket Navigator time-to-trial statistics for the Eastern District of Texas for the time period from 2015 to February 3, 2026 |
| 23 | U.S. Pat. No. 10,950,623, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-1 (N.D. Cal. Nov. 9, 2023) |
| 24 | U.S. Pat. No. 11,501,822, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-2 (N.D. Cal. Nov. 9, 2023) |
| 25 | U.S. Pat. No. 10,658,378, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-3 (N.D. Cal. Nov. 9, 2023) |
| 26 | U.S. Pat. No. 10,937,806, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-4 (N.D. Cal. Nov. 9, 2023) |
| 27 | U.S. Pat. No. 10,861,872, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-5 (N.D. Cal. Nov. 9, 2023) |
| 28 | U.S. Pat. No. 11,468,957, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-6 (N.D. Cal. Nov. 9, 2023) |
| 29 | U.S. Pat. No. 11,600,342, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-7 (N.D. Cal. Nov. 9, 2023) |
| 30 | U.S. Pat. No. 10,868,031, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 1-8 (N.D. Cal. Nov. 9, 2023) |
| 31 | U.S. Pat. No. 10,879,254, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-1 (N.D. Cal. July 12, 2024) |
| 32 | U.S. Pat. No. 11,581,322, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-2 (N.D. Cal. July 12, 2024) |
| 33 | U.S. Pat. No. 10,886,291, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-3 (N.D. Cal. July 12, 2024) |
| 34 | U.S. Pat. No. 11,482,532, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-4 (N.D. Cal. July 12, 2024) |
| 35 | U.S. Pat. No. 11,145,666, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-5 (N.D. Cal. July 12, 2024) |
| 36 | U.S. Pat. No. 11,450,604, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-6 (N.D. Cal. July 12, 2024) |
| 37 | U.S. Pat. No. 10,672,711, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-7 (N.D. Cal. July 12, 2024) |
| 38 | U.S. Pat. No. 11,101,276, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-8 (N.D. Cal. July 12, 2024) |
| 39 | U.S. Pat. No. 11,568,941, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-9 (N.D. Cal. July 12, 2024) |
| 40 | U.S. Pat. No. 10,879,164, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-10 (N.D. Cal. July 12, 2024) |

| Exhibit | Description |
|---------|-------------|
| 41 | U.S. Pat. No. 12,010,838, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223, Dkt. 1-11 (N.D. Cal. July 12, 2024) |
| 42 | Counterclaim Defendants' Reply in Support of Their Motion to Dismiss Counterclaims, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 53 (N.D. Cal. Apr. 2, 2024) |
| 43 | Related Case Order, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 95 (N.D. Cal. Aug. 2, 2024) |
| 44 | Order Granting Motion to Consolidate, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 106 (N.D. Cal. Aug. 21, 2024) |
| 45 | Yangtze Memory Technologies Company, Ltd.'s First Amended Consolidated Complaint, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 151 (N.D. Cal. Oct. 8, 2024) |
| 46 | Order Granting Motion to Stay Case Pending *Inter Partes* Review, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792, Dkt. 243 (N.D. Cal. Mar. 14, 2025) |
| 47 | First Amended Initial Disclosures of Counterclaim Defendant Yangtze Memory Technologies Company, Ltd. Pursuant to Rule 26(A)(1), *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792 (N.D. Cal. Oct. 18, 2024) |
| 48 | Plaintiff and Counterclaim Defendant Yangtze Memory Technologies Company, Ltd.'s Disclosure of YMTC II Asserted Claims and Infringement Contentions, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792 (N.D. Cal. Oct. 2, 2024) |
| 49 | Complaint for Declaratory Judgment of Non-Infringement, *Micron Tech., Inc. et al. v. Yangtze Memory Techs. Co., Ltd.*, No. 3:25-cv-08588, Dkt. 1 (N.D. Cal. Oct. 7, 2025) |
| 50 | Micron's Administrative Motion to Consider Whether YMTC/Micron Cases Should Be Related Pursuant to Civ. L.R. 3-12(B), *Micron Tech., Inc. et al. v. Yangtze Memory Techs. Co., Ltd.*, No. 3:25-cv-08588, Dkt. 21-1 (N.D. Cal. Dec. 22, 2025) |
| 51 | Defendant's Notice of Motion and Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(B)(6), *Micron Tech., Inc. et al. v. Yangtze Memory Techs. Co., Ltd.*, No. 3:25-cv-08588, Dkt. 28 (N.D. Cal. Jan. 13, 2026) |

**Foley Declaration**

| Exhibit | Description |
|---------|-------------|
| A | Distribution Agreement between Avnet, Inc. and Micron Semiconductor Products, Inc., dated August 1, 2024 [FILED UNDER SEAL] |

iii

## I.      INTRODUCTION

This patent-infringement action belongs in the Northern District of California.  Yangtze Memory Technologies Co., Ltd. ("YMTC") filed the first two of its three infringement actions against Micron[1] there in 2023 and 2024, asserting similar claims against all the products that YMTC accuses here.  After that court entered a series of rulings against YMTC, however, YTMC filed the instant suit in Marshall—even though this case involves the same technology and common products and sources of proof as the California litigation, and even though both Micron and YMTC have a significant presence in that district (including YMTC's only U.S. office) and no presence here.  To try to manufacture venue, YMTC named Avnet, Inc. ("Avnet") and Micron Technology Texas, LLC ("Micron Texas") as codefendants, even though Avnet is only one of many non-exclusive Micron distributors, and even though Micron Texas ceased operations before the Patent Office issued (or YMTC had even filed for) any of YMTC's patents.  Indeed, Micron Texas formally dissolved before six of the eight patents issued.

The circumstances—substantially similar co-pending litigation between the parties in California, greater proximity to California for every important witness, and no connection at all between this District and any facet of this case—require transfer to the Northern District of California.  The Court should first sever YMTC's peripheral claims against Micron Texas, most of which can and should be dismissed, and all of which should at minimum be stayed in the interest of judicial economy.  This Court should then transfer the remaining claims under the first-to-file rule or 28 U.S.C. § 1404(a), each of which independently compels transfer.  (Should the Court deny transfer, it should grant Avnet's separately filed conditional motion to sever and stay YMTC's claims against Avnet.  If the Court *does* transfer, Avnet will seek the same relief from

---

[1] This brief refers to Micron Technology, Inc. ("Micron Technology") and Micron Semiconductor Products, Inc. ("Micron Semiconductor") collectively as "Micron."

the Northern District of California.  *Id.* at 2.

## II.    FACTUAL BACKGROUND

### A.    No Party In This Suit Maintains Any Relevant Connection To Texas.

YMTC, a Chinese chip manufacturer, accuses Micron, a leading American designer and manufacturer of computer-memory products, of infringing eight patents: seven related to 3D NAND flash memory and one related to dynamic random-access memory ("DRAM").[2]  Compl. ¶¶ 1, 4.  YMTC accuses Micron's 176-Layer, 232-Layer, and 276-Layer 3D NAND products of infringing the asserted 3D NAND patents and Micron's LPDDR5 and LPDDR5X DRAM products of infringing the asserted DRAM patent.  Compl. ¶¶ 84, 193, 219, 245, 268-69.

YMTC maintains its principial place of business in Wuhan, China and operates several additional Asia offices.  Compl. ¶ 3.  YMTC also maintains a single U.S.-based office located in Santa Clara, California.  *See* Lang Decl., Exs. 1, 2.  This Santa Clara office serves as home base for David Duffin, YMTC's U.S. General Manager and Head of International Sales.  *Id.*, Exs. 2, 3, 47.  Daesik Song, inventor of the '851 patent, current YMTC director, and former Micron employee, also sits in Santa Clara. *Id.* ¶ 29, Exs. 2, 4.  Notably, YMTC took the position in the California litigation that it does not sell products in the U.S.  *Id.*, Ex. 42 (*YMTC 1/2*, Dkt. 53 at 3, n.4).  YMTC does not appear to have any facilities, employees, or other presence in Texas.  Every inventor, aside from Daesik Song, appears to reside in China.  Compl., Exs. 1-8 (asserted patents, uniformly identifying inventors in China).

Micron centers its U.S. operations in its over 6,300-employee Boise headquarters. Kiehlbauch Decl. ¶ 5.  It also maintains a San Jose, California office with over 2,300 employees. *Id.* ¶ 7.  Micron designs the accused 3D NAND products in San Jose and Boise, as well as in

---

[2] The patents in suit are U.S. Patent Nos. 10,707,851, 11,233,066, 12,068,250, 12,075,621, 12,094,767, 12,254,925, 12,266,403, and 12,232,313.

Singapore, where the products are also manufactured. *Id.* ¶ 10. Micron designs the accused DRAM products in Hashimoto, Japan and Hyderabad, India, with a small additional cadre of engineers in Boise providing process-development support and testing. *Id.* ¶ 11. Manufacturing of the accused DRAM products likewise occurs abroad, in Hashimoto and Taiwan. *Id.* None of Micron's research, design, development, or manufacturing for any of the accused products occurs in Texas. *Id.* ¶¶ 10-11. Moreover, Micron has no place of business in this District, either now or when YMTC filed its complaint. *See id.* ¶ 8; Dkt. 24 at 1-3 (pending MTD for improper venue).

Micron Texas is a dissolved Idaho limited liability company that formed in 1998 and formally dissolved in October 2023, two years before YMTC filed its Complaint. *See* Dkt. 24 at 3-4; Dkt. 24-4 (RJN, Ex.3). In December 2017, Micron Texas's assets and liabilities transferred to its parent, Micron Technology, and, apart from some intercompany transactions, it engaged in no financial activity or business operations afterward. Dkt. 24-9 (Mealey-Ozawa Decl. ¶¶ 6-7). It has no employees or records in any location. *Id.*; *see also* Dkt. 24-13 (Becker Decl. ¶¶ 7, 14).

Avnet, a global electronic-component-technology distributor and solutions provider, maintains 42 offices across 26 states, including a 657-person headquarters in Phoenix, Arizona, a 94-person office in San Jose, California, and a 73-person office in Richardson, Texas. Foley Decl. ¶¶ 10-13. Avnet serves as a non-exclusive distributor (one of at least 11 others) of certain Micron products. Dkt. 24-11 (Aikenhead Decl. ¶¶ 4-6); Foley Decl. ¶¶ 4-6; Compl. ¶¶ 24, 26, 31, 138, 158, 164, 186, 212, 261, 294 (identifying Avnet as Micron's "sale and distribut[ion]" arm). Avnet also provides customers with advice and support regarding their selection of electronic components. Foley Decl. ¶ 8. Regional Technical Managers and sales directors located in San Jose and elsewhere, but not in Texas, supervise this function. Foley Decl. ¶¶ 16-17. The Avnet employees managing Avnet's distributor relationship with Micron are in Phoenix, Arizona and

3

Cherry Hill, New Jersey. *Id*. ¶¶ 1, 14. No Avnet employee with unique knowledge of Micron's products or the substance of this litigation resides in Texas. *See id*. ¶¶ 14-17.

**B.     YMTC Initiated Its Patent-Litigation Campaign Against Micron In California, Then Filed This Substantially Similar Suit In Texas.**

In November 2023, YMTC filed its first suit against Micron in the Northern District of California, asserting eight patents against Micron's 3D NAND memory products. *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:23-cv-05792-RFL (N.D. Cal.) ("*YMTC 1*"). It filed its second suit there in July 2024, asserting 10 patents against Micron's 3D NAND products and one patent against certain Micron DRAM products. *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc. et al.*, No. 3:24-cv-04223-RS (N.D. Cal.) ("*YMTC 2*"). The court consolidated the cases under Case No. 23-cv-5792 (N.D. Cal.). Lang Decl., Ex. 44.

In October 2025, YMTC filed the instant suit ("*YMTC 3*") against Micron, Micron Texas, and Avnet, asserting infringement of eight additional patents related to the 3D NAND technology and DRAM. *See* Compl. ¶¶ 84, 193, 219, 245, 268-69; Lang Decl., Ex. 45 (*YMTC 1/2* Consolidated Complaint, Dkt. 151, ¶¶ 23-29). Seven of the newly asserted patents share an inventor with a patent asserted in *YMTC 1/2*. Lang Decl. ¶ 29. These inventors—Zhiliang Xia, Di Wang, and Wenxi Zhou (a former Micron employee)—are likely to be witnesses in both cases. *See id*., Ex. 47 (YMTC's initial disclosures in *YMTC 1/2*); Ex. 5 (Zhou LinkedIn Profile). At least seven of the newly asserted patents claim overlapping structures as asserted patents in the *YMTC 1/2*, often using overlapping claim terms. These include "word line contacts,"[3] the "source contact

---

[3] *Compare* '767 patent (*YMTC 3*) (titled "Barrier layers for word line contacts in a three-dimensional NAND memory and fabrication methods thereof"), *with* U.S. Pat. Nos. 10,672,711 and 11,101,276 (*YMTC 1/2*) (titled "Word line contact structure for three-dimensional memory devices and fabrication methods thereof."). Lang Decl., Exs. 37-38.

structure,"[4] the "staircase structure" between arrays,[5] the "gate line slit" with "barrier layer[s],"[6] the "top select gate,"[7] and voltage pulses.[8]  Moreover, every accused product in *YMTC 3* has also been accused by YMTC in *YMTC 1/2*.  YMTC accuses Micron's 176-Layer, 232-Layer, 276-Layer and LPDDR5/LPDDR5X products in both cases.  Compl. ¶ 84; Lang Decl., Ex. 45 (*YMTC 1/2* Consolidated Complaint, Dkt. 151 ¶¶ 24-29), Ex. 48 (*YMTC 1/2* infringement contentions).

The cases also involve functionally identical parties: YMTC versus Micron and its wholly owned subsidiaries, including Micron Semiconductor Products, Inc. and Micron Technology Texas, LLC in this case and Micron Consumer Products Group, LLC in *YMTC 1/2*.  *Compare* Compl., *with* Lang Decl., Ex. 45 (*YMTC 1/2* Consolidated Complaint, Dkt. 151).  YMTC alleges no specific action by any Micron subsidiary in either case.  YMTC has added Avnet as a co-defendant in *YMTC 3* but alleges no conduct by Avnet beyond selling and distributing Micron

---

[4] *Compare* '066 patent (*YMTC 3*) (claiming "a source contact structure"), *with* U.S. Pat. Nos. 10,861,872 (*YMTC 1/2*) (claiming a "dummy source structure" and "source structure"), 10,950,623 (*YMTC 1/2*) (claiming a "common source region" including the structure) *and* 10,879,254 and 11,581,322 (*YMTC 1/2*) (claiming a "slit"; substantially the same structure).  Lang Decl., Exs. 27, 23, 32.

[5] *Compare* '250 patent (*YMTC 3*) (claiming "a first staircase [] formed between the first array region and the second array region"), *and* '313 patent (*YMTC 3*) (claiming "a staircase structure between the first memory array structure and the second memory array structure"), *with* U.S. Pat. No. 11,450,604 (*YMTC 1/2*) (claiming "a staircase structure in an intermediate of the memory array structure").  Lang Decl., Ex. 36.

[6] *Compare* '767 patent (*YMTC 3*) (claiming "a gate line slit (GLS)" with "a first barrier layer" and "a second barrier layer"), *with* U.S. Pat. Nos. 11,101,276 (*YMTC 1/2*) (claiming "an etch-stop layer" and "an insulating layer" on the "staircase structure"), *and* 10,672,711 (*YMTC 1/2*) (claiming "gate stack" having "a barrier layer," "an etch-stop layer," and "an insulating layer").  Lang Decl., Exs. 38, 37.

[7] *Compare* '621 patent (*YMTC 3*) (claiming elements pertaining to the "drain select gate line," also known as a top select gate), *and* '403 patent (*YMTC 3*) (claiming formation of "top select gate"), *with* U.S. Patent No. 11,600,342 (*YMTC 1/2*) (claiming elements concerning the "top select gate").  Lang Decl., Ex. 29.

[8] *Compare* '925 patent (*YMTC 3*) (claiming application of various voltage "pulses"), *with* U.S. Pat. No. 11,568,941 (*YMTC 1*) (claiming application of various "voltage[s]").  Lang Decl., Ex. 39.

products. *See* Compl. ¶¶ 24, 26, 31, 138, 158, 164, 186, 212, 261, 294.  It does not allege that Avnet designed, manufactured, or configured (e.g., generated control code for) any product.

**C.      Micron Filed Suit In The Northern District Of California, Seeking Coordination Of All YMTC-Micron Actions Before A Single Court.**

The day after YMTC filed this suit, Micron filed a declaratory-judgment action against YMTC in the Northern District of California with respect to the patents YMTC has asserted here. Case No. 3:25-cv-08588-VC (N.D. Cal.) ("*YMTC 4*"); Lang Decl., Ex. 49 (*YMTC 4* Complaint, Dkt. 1).  Micron then sought coordination of all proceedings between YMTC and Micron in the Northern District of California before a single court.  It filed an administrative motion asking the court to relate *YMTC 4* with *YMTC 1/2* and assign each case to the same judge, as provided in the local rules.  Lang Decl., Ex. 50 (*YMTC 4*, Dkt. 21-1).  YMTC opposed Micron's motion and moved to dismiss *YMTC 4* under the first-to-file rule, arguing that the present suit (*YMTC 3*) is the "first-filed action" and that Micron should therefore be forced to raise its declaratory-judgment arguments as counterclaims in this Court.  *Id.*, Ex. 51 (*YMTC 4*, Dkt. 28).  Today, Micron opposed.

The parties have also filed several related motions in this Court:

- Micron's pending motion to dismiss for improper venue explains, among other things, that Micron had no place of business in this District when YMTC filed suit.  Dkt. 24 at 3-4, 15.

- The instant motion argues that, if the Court does not dismiss outright on venue grounds, it should (1) sever and stay (or dismiss for failure to state a claim) the claims against Micron Texas, and then (2) transfer the remaining claims to the Northern District of California. [9]

---

[9] Micron's venue motion sought dismissal instead of transfer to the Northern District of California in part because Micron had not yet moved to sever the claims against Micron Texas, which, as explained below (at 8-9), cannot be heard there.  *See* 28 U.S.C. § 1406(a); Dkt. 24 at 15.  Severing the claims against Micron Texas, as requested in the instant motion, would eliminate that threshold barrier to transfer under § 1406(a).  Nevertheless, dismissal under § 1406(a) would be appropriate

- In the event this Court does not grant transfer, Avnet today conditionally moves to sever and stay claims against Avnet, which are peripheral to the claims against Micron. If this Court grants transfer, Avnet will file a similar motion in the Northern District of California.

## III.    LEGAL STANDARDS

**Severance.** Under Federal Rule of Civil Procedure 21, "[a] court may … sever any claim against a party." Fed. R. Civ. P. 21. In patent cases, questions of severance "are governed by Federal Circuit law," *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012), though the law of "sister circuits [can provide] guidance," *In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072, at *2 (Fed. Cir. Dec. 15, 2022). Under Federal Circuit law, courts may properly exercise their severance authority "to facilitate transfer." *Amazon.com*, 2022 WL 17688072, at *2. "Severance and transfer are appropriate 'where the administration of justice would be materially advanced.'" *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)).

**Transfer under first-to-file rule.** In patent cases, application of the first-to-file rule "is governed by [Federal Circuit] law," *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013), though the Federal Circuit has not identified "any material difference between" its law and Fifth Circuit's, *In re Seattle SpinCo, Inc.*, 817 F. App'x 987, 989 n.1 (Fed. Cir. 2020). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

---

because the interest of justice does not demand transfer, as the Northern District of California already presides over *YMTC 4*—a mirror-image declaratory-judgment case—and YMTC faces no statute-of-limitations issue in refiling suit in the Northern District of California to the extent it wishes to do so. Dkt. 24 at 15 (collecting cases). At the very least, this Court should dismiss the claims against Micron Texas that assert patents that issued after Micron Texas dissolved. *See infra* 9 & n.10.

Generally, "the court in which an action is first filed" should "determine whether subsequently filed cases involving substantially similar issues should proceed," so if a court in which a later-filed action finds "that the issues might substantially overlap, the proper course of action [is] to transfer the case to the [first] court to determine which case should … proceed." *Id.* at 606; *accord In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1310 (Fed. Cir. 2020).

**Transfer under 28 U.S.C. § 1404(a).** "Regional circuit law" governs transfer under § 1404(a). *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021). Under Fifth Circuit law, transfer under § 1404(a) "should be granted upon a showing that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*")). "'[C]onvenience' turns on a number of public and private interest factors," none of which is dispositive. *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Plaintiff's choice of forum is not entitled to special weight. *Volkswagen II*, 545 F.3d at 315.

## IV.    ARGUMENT

### A.    This Court Should Sever, Dismiss, And Stay YMTC's Claims Against Micron Texas.

This Court should sever YMTC's claims against Micron Texas to allow transfer of the rest of the case to the Northern District of California, the home of all other YMTC-Micron litigation.

To start, YMTC's claims against Micron Texas cannot proceed in the Northern District of California (or here) because venue would be improper: Micron Texas, an Idaho LLC that dissolved before YMTC filed its complaint, "has no regular and established places of business [in any district] because it is no longer conducting business" and therefore can only be sued in Idaho. Dkt. 24 at 3-4, 15 (Micron's pending motion to dismiss for improper venue (citing Dkt. 24-9 (Mealy-

8

Ozawa Decl.) ¶¶ 6-8)); *see* 28 U.S.C. § 1400(b).  That favors severance from the remainder of the action because Micron Texas is, at most, "only peripherally involved in, or indirectly connected to, the alleged wrongdoing."  *Amazon.com*, 2022 WL 17688072, at *2; *see id.* at *3.

YMTC's complaint makes Micron Texas's peripherality clear.  It discusses Micron and Micron Texas in gross, alleging no particular conduct by Micron Texas.  Moreover, as to six of the eight asserted patents, infringement by Micron Texas is facially impossible because those patents issued after Micron Texas dissolved in October 2023.  *Compare* Dkt. 24-4 (RJN, Ex. 3 (judicially noticeable dissolution filings)) *with* Dkt. 1, Exs. 1-8 (asserted patents); *see, e.g.*, *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1360 (Fed. Cir. 2007) (no infringement by pre-issuance conduct); *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 303 (Fed. Cir. 1995) (same).  This Court thus should dismiss six of the eight counts asserted against Micron Texas for failure to state a claim upon which relief can be granted.  *See Haygood v. Dies*, No. 18-30866, 2023 WL 2326424, at *5 n.23 (5th Cir. Mar. 2, 2023) (Fifth Circuit allows successive Rule 12(b)(6) motions (citing *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 686 (5th Cir. 2017))).[10]

As for the two patents that issued before Micron Texas formally dissolved—the '066 and '851 patents—affidavit evidence confirms that Micron Texas engaged in no relevant conduct for years before any possible liability period and therefore could not have infringed.  Specifically,

---

[10] The facial baselessness of these claims likewise supports their dismissal if this Court rules in favor of Micron's pending motion to dismiss for lack of venue.  28 U.S.C. § 1406(a) only allows transfer "if it is in the interest of justice," and transferring meritless claims is not in the interest of justice.  *See, e.g.*, *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000-01 (Fed. Cir. 1987) ("'[I]f it is in the interest of justice' [in § 1406(a)] relates to claims which are nonfrivolous and as such should be decided on the merits."); *Emrit v. Jules*, No. 6:23-CV-00031, 2023 WL 5207449, at *4 (S.D. Tex. July 31, 2023) (recommending dismissal for improper venue to avoid "burden[ing] another court with [a] frivolous lawsuit" and "wast[ing] more judicial resources"), *report and recommendation adopted*, No. 6:23-CV-00031, 2023 WL 5963436 (S.D. Tex. Sept. 13, 2023).

Micron Texas transferred all assets and liabilities to Micron Technology and ceased all financial activity and business operations (apart from some intercompany transactions) in December 2017, well before the issuance *and* filing date of any asserted patent.  Dkt. 24-9 (Mealey-Ozawa Decl.) ¶¶ 6-7.  To avoid any delay in transfer (or dismissal based on Micron's venue motion), Micron Texas does not currently seek summary judgment of non-infringement based on that affidavit evidence.  The point for present purposes is simply that claims against Micron Texas on these two patents—a tiny fraction of the lawsuit—are a sideshow from the "the main subject matter of the action" and thus are ripe for severance to allow transfer.  *Wyndham*, 398 F.2d at 618.

Further supporting severance and transfer, resolution of the claims against Micron would resolve "major premises" of the claims against Micron Texas, *Nintendo*, 756 F.3d at 1365-66, and likely dispose of them altogether.  Any determination of invalidity would apply universally.  So would any finding of non-infringement, as YMTC asserts no infringement theory unique to Micron Texas.  Conversely, because YMTC offers no distinct infringement allegations as to Micron Texas, a finding of infringement by the other Micron defendants "is predicate to recovery from" Micron Texas, *id.*, who would retain the unique defense that it undertook no relevant actions after December 2017, which could be litigated here if necessary.  Meanwhile, if YMTC were to prevail in the Northern District of California and recover damages, that would "preclude suit" against Micron Texas., *id.*, as "full satisfaction received from one tort-feasor prevents further recovery against another," *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 512 (1964).

The claims against Micron Texas therefore are peripheral to the remaining claims, and as further discussed below (§ IV.B.2), transferring the latter would "'materially advance[]'" "'the administration of justice'" by "facilitat[ing] [a] just, convenient, efficient, and less expensive determination" of the underlying disputes. *Nintendo*, 756 F.3d at 1365-66 (quoting *Wyndham*, 398

F.2d at 618).  Staying any surviving claims against Micron Texas would ensure that this Court can resolve any remaining issues based on the outcome in the Northern District of California—avoiding unnecessary, duplicative litigation.  *See, e.g.*, *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-CV-82-JRG, 2017 WL 3712912, at *2 (E.D. Tex. July 12, 2017).[11]

**B.    This Court Should Transfer YMTC's Remaining Claims To The Northern District Of California.**

Upon severance of YMTC's claims against Micron Texas, this Court should transfer the remaining claims to the Northern District of California.  Venue is proper there because YMTC alleges that defendants sold infringing products nationwide, including in California, *e.g.* Compl. ¶ 13, and both Micron and Avnet maintain offices in the Northern District of California, where YMTC earlier filed two patent cases against Micron.  Kiehlbauch Decl. ¶ 7; Foley Decl. ¶ 12; *see* 28 U.S.C. § 1400(b).  Transfer is warranted under either or both the first-to-file rule and 28 U.S.C. § 1404(a).

**1.    The First-To-File Rule Warrants Transfer.**

This Court should transfer under the first-to-file rule because YMTC filed the consolidated cases in the Northern District of California *(YMTC 1/2)* before YMTC filed this case (*YMTC 3*), and there is at least "a likelihood that the second-filed action" (this case) "might substantially overlap with the first action" (*YMTC 1/2*). *Aventis Pharms. Inc. v. Teva Pharms. USA Inc.*, No. 2:06-CV-469, 2007 WL 2823296, at *1 (E.D. Tex. Sept. 27, 2007).  This Court, as the court

---

[11] Severance for peripherality alone calls for a stay—courts routinely stay severed peripheral proceedings to promote judicial economy.  *See, e.g.*, *Nintendo*, 756 F.3d at 1365-66; *Saint Lawrence*, 2017 WL 3712912, at *1-2; *Shifferaw v. Emson USA*, 2010 WL 1064380, at *3-4 (E.D. Tex. Mar. 18, 2010).  Independently, the traditional stay factors also warrant a stay: (1) YMTC would not face "undu[e] prejudice," as the case against the true defendant—Micron—would move forward; (2) the stay "will simplify the issues … and the trial," as resolution of the main action will either resolve or substantially narrow the claims against Micron Texas; and (3) the case is indisputably at a very early stage.  *Network Sys. Techs., LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00481-JRG, 2023 WL 7649372, at *8 (E.D. Tex. Nov. 14, 2023).

hearing the later-filed action, need and should ask only whether the actions "*might* substantially overlap." *AmberWave Sys. Corp. v. Intel Corp.*, No. 2:05-CV-321, 2005 WL 2861476, at *1 (E.D. Tex. Nov. 1, 2005) (emphasis added). If so, this Court should transfer to the Northern District of California to make the ultimate determination of whether "the cases actually do substantially overlap and require consolidation." *Id.*

Substantial similarity "does not require that the core issues be identical, but [rather] that the two actions will involve closely related questions or subject matter." *Id.* at *2. Just so here. YMTC levels all asserted patents against the same two overarching technologies: (1) 3D NAND flash memory and (2) low-power DDR5 DRAM. *See supra* 4. All of the accused products in this case are also accused in *YMTC 1/2*. *See supra* 5. Seven of the eight patents here share an inventor with a patent in the *YMTC 1/2*, with three common inventors across the two actions. Lang Decl. ¶ 29. At least seven of the patents here claim overlapping structures with the patents in the *YMTC 1/2*, often using overlapping claim terms. *See supra* 4-5.

Damages issues will also substantially overlap, as the actions involve overlapping products and similar damages periods. For the patents asserted against Micron's low-power DDR DRAM, the damages period in both actions begins in 2020, Compl. ¶ 78; Lang Decl., Ex. 45 (*YMTC 1/2* Consolidated Complaint, Dkt. 151 ¶ 227). For the 3D NAND patents, the periods are very close: here, the period begins in 2022, Compl. ¶ 46, and in *YMTC 1/2*, it begins in 2020, Lang Decl., Ex. 45 (*YMTC 1/2* Consolidated Complaint, Dkt. 151 ¶ 195). Thus, both actions will both likely involve: (1) evaluation of many, if not all, of the same licenses related to 3D NAND and DRAM technology; (2) depositions of the same witnesses about those licenses; (3) exploration of the parties' licensing and marketing practices around 2020; (4) evaluation of the commercial relationship between Micron and YMTC as of 2020 and whether they were marketplace

12

competitors at the time; and (5) the same damages experts opining on the state of the 3D NAND and DRAM market around 2020.  *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factors 2, 3, 4, 5, 12, and 14).

To top it off, the cases involve essentially the same parties.  With Micron Texas severed, the only additional party here is Avnet as co-defendant.  But Avnet's inclusion is immaterial. YMTC alleges no conduct by Avnet beyond selling and distributing Micron products, Compl. ¶¶ 24, 26, 31, 138, 158, 164, 186, 212, 261, 294, and as a non-exclusive distributor, Avnet does not manufacture, design, or configure any of Micron's products, Foley Decl. ¶¶ 7-9.  Moreover, Micron is indemnifying Avnet and providing its defense.  *Id.* ¶ 6.  Thus, the true defendant— Micron—is the same.  *See Nintendo*, 756 F.3d at 1365 (holding manufacturer, not retailers, of accused products to be the "true defendant"); *cf. Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (parties need not be "identical"); *VIP Pump Servs., LLC v. Poole*, No. 2:24-CV-00703-JRG, 2025 WL 918440, at *1 (E.D. Tex. Mar. 26, 2025) (cases substantially similar, notwithstanding that an additional defendant in one case, including because "[a]ll parties in both actions are represented by the same lawyers on both sides").

Courts in this district have found substantial similarity in analogous circumstances.  The court in *AmberWave* transferred a second-filed case based on first-to-file rule where the cases involved different patents that "address[ed] different scientific aspects, mechanical engineering and electrical engineering, of semiconductor transistors" because the "subject matter [was] closely related" and the parties, accused products, and issues overlapped.  2005 WL 2861476, at *1-2. Similarly, the court in *Aventis* transferred a second-filed case based on "first-filed principles" even though the cases involved different patents, given overlap in the accused product and the infringement theory.  2007 WL 2823296, at *1-2.  And in *E-Z-EM, Inc. v. Mallinckrodt, Inc.*, the

13

court found a case that involved a different patent than two others to be the first-filed case because the patents "cover[ed] generally the same technology" and overlapping inventors. No. 2-09-CV-124, 2010 WL 1378820, at *2 (E.D. Tex. Feb. 26, 2010). The Northern District of California has ruled similarly. *See, e.g.*, *Quad/Tech Inc. v. Q.I. Press Controls,* No. C 10-2243 CRB, 2010 WL 4722501, at *2-3 (N.D. Cal. Nov. 15, 2010) (substantial similarity notwithstanding different accused products and incomplete overlap in parties and patents where two cases involved "similar technology, similar claim terms, and similar issues").

At a minimum, these facts demonstrate a likelihood of substantial similarity that demands deference to the Northern District of California's judgment. "Once the likelihood of substantial overlap between the two suits ha[s] been demonstrated, it [i]s no longer up to [the second-filed court] to resolve …. the ultimate determination of whether there actually [i]s a substantial overlap"—that determination "belong[s]" to the first-filed court. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). This Court should therefore transfer for the Northern District of California to resolve the first-to-file question. "This Court simply may not, consistent with the principles of comity and conservation of judicial resources, usurp the first-filed court's role." *Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 999 (E.D. Tex. 1993); *see, e.g.*, *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:22-CV-00168-JRG, 2022 WL 17417972, at *2 (E.D. Tex. Dec. 5, 2022) (transferring because "it is not the second-filed court's position to determine the appropriate venue"; limiting the analysis "avoids trenching on the authority of [a] sister court, one of the very abuses the first-to-file rule is designed to prevent").

## 2.    Independently, 28 U.S.C. § 1404(a) Warrants Transfer.

This Court also should transfer on a separate basis: that the private and public factors governing transfer under § 1404(a) dictate that the Northern District of California "is clearly more

14

convenient than" here.  *Genentech*, 566 F.3d at 1342.  Almost every relevant factor, and every important factor, heavily favors transfer.  Others are neutral.  No factor supports retaining the case.

### a.   The Private-Interest Factors Favor Transfer

#### (i)   The Ease and Expense of Trial Attendance Strongly Favors Transfer

"[T]he single most important factor" is "the relative convenience for and cost of attendance of witnesses." *Juniper*, 14 F.4th at 1318.  Distance from home "means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen I*, 371 F.3d at 204-05.  Moreover, inconvenience "increases in direct relationship to [] additional distance." *Id*.  This factor strongly favors transfer, which would save significant time and money for all the most important witnesses—Micron's witnesses and the inventors—and would not increase inconvenience for any witness.

Micron's potential witnesses sit in either San Jose, California; Boise, Idaho; or Hashimoto, Japan. *See* Kiehlbauch Decl. ¶¶ 15-16.  For Micron's San Jose-based witnesses, transferring the case to California would save roughly $325 in airfare and 13 hours of travel time as compared to traveling to Marshall, and would eliminate most if not all meal, lodging, and rental car expenses, as well as any extended time away from work and family. *See* Lang Decl. ¶ 13.  For Boise-based witnesses, transfer would save roughly $550 in airfare and approximately 7.5 hours in travel time. Lang Decl. ¶¶ 14-15.  For Japan-based witnesses, transfer would save roughly $1,100 in airfare and 2 hours in travel time or, alternately, could save roughly 17.5 hours in travel time for only $300 more. Lang Decl. ¶¶ 16-17.  Moreover, out-of-town witnesses could use Micron's San Jose office to minimize the inconvenience of being away from their home office and would likely be able to combine the trip with meetings with their San Jose colleagues.  Indeed, many of the Boise-

15

based engineers on the 3D NAND team routinely visit San Jose for work. Kiehlbauch Decl. ¶ 10.

Transfer also benefits YMTC's witnesses. At least one of the YMTC inventors, Daesik Song, appears to be located near San Jose. *See* Lang Decl., Exs. 2, 4. The other YMTC inventors (three of whom also invented patents asserted in *YMTC 1/2*) appear to be located in China. *See* Compl., Exs. 1-8 (*YMTC 3* asserted patents); Lang Decl. ¶ 28; Lang Decl., Exs. 23-41 (*YMTC 1/2* asserted patents). Travel from YMTC's Wuhan headquarters to San Francisco would save roughly 8 hours in airfare as compared to Marshall over the course of a round trip and cost roughly the same. *See* Lang Decl. ¶¶ 18-19. Travel from Beijing to San Francisco would save roughly 12 hours and $600, or could save 18 hours for about the same price. *See* Lang Decl. ¶¶ 20-21. Moreover, Santa Clara houses YMTC's only U.S. office and would likely offer a comparatively convenient workspace for these employees. *See* Lang Decl., Exs. 1, 2. David Duffin, YMTC's U.S. General Manager and Head of International Sales, likewise works in YMTC's Santa Clara office and would not have to travel at all. *See* Lang Decl., Exs. 2, 3.

Should Avnet witnesses appear, transfer increases convenience or has no effect. Multiple Avnet managers knowledgeable about the support and sales practices underlying YMTC's induced-infringement claim live in San Jose, with none living in or near Texas. Foley Decl. ¶¶ 15-16; *see also id.* (other employees with the same job titles live in Massachusetts, Minnesota, New Jersey, Illinois, Colorado, and Canada). The employees who manage Avnet's relationship with Micron sit in Cherry Hill, New Jersey and Avnet's Phoenix, Arizona headquarters. *Id.* ¶¶ 1, 14. Round-trip travel from Phoenix to San Francisco saves roughly 5.5 hours and $200 in airfare; travel from Cherry Hill (near Philadelphia) to San Francisco takes just one hour longer than travel to Marshall with similar airfare costs. *See* Lang Decl. ¶¶ 22-25; *cf. Polaris Innovations Ltd. v. Dell, Inc.*, No. SA-16-CV-451-XR, 2016 WL 7077069, at *9 (W.D. Tex. Dec. 5, 2016) (assigning

16

"minimal" importance to inconvenience of witness with a "lower" "importance").

**(ii)     Ease of Access to Non-Witness Sources of Proof
Strongly Favors Transfer**

"[T]he ease of access to non-witness evidence, such as documents and other physical evidence," *In re Apple, Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020) (citing *Volkswagen II*, 545 F.3d at 316-18), strongly favors transfer. The non-witness sources of proof lie primarily in Idaho, California, Japan, and Singapore, with no sources of proof in Texas, making such proof relatively easier to access from California than here. *See* Kiehlbauch Decl. ¶¶ 12-13.

Micron's Boise headquarters house relevant design and development documents relating to the accused products, as well as physical samples of the accused 3D NAND and DRAM products. *Id.* Additional Micron documents related to the design and development of the 3D NAND products lie in San Jose and in Singapore. *Id.* ¶ 12. Additional DRAM documents exist abroad, primarily in Japan. *Id.* ¶ 13. To the extent Avnet has relevant non-witness evidence, it is stored by Avnet's cloud storage provider in California. Foley Decl. ¶ 18. Non-witness sources of proof from YMTC may also exist in San Jose, YMTC's only U.S. office. *See* Lang Decl., Exs. 1, 2. No party appears to maintain any relevant source of proof in Marshall or elsewhere in Texas. *See* Kiehlbauch Decl. ¶¶ 12-13; Foley Decl. ¶ 18.

Notably, the sources-of-proof factor particularly favors transfer because much of the discovery relevant to this case overlaps with the discovery already proceeding in *YMTC 1/2*, which concerns the same accused products. Additionally, discovery in the *YMTC 1/2* has revealed that the parties can most efficiently conduct secure review of Micron confidential technical documents in Micron's Boise headquarters as opposed to any other location. Lang Decl. ¶ 30; Kiehlbauch Decl. ¶ 21. Thus, in addition to the value of avoiding duplicative efforts, it would be relatively

17

easier to review and produce records at Micron's Boise headquarters from the Northern District of California (640 miles away) than from Marshall (1,761 miles away).  Lang Decl. ¶¶ 26, 30.

### (iii)   Availability of Compulsory Process Is Neutral

The "availability of compulsory process" "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).  At this stage, Micron is not aware of any relevant third-party witnesses in either district, or within 100 miles of either courthouse, making this factor neutral.

### (iv)   Judicial Economy Strongly Favors Transfer

Courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive," *Volkswagen II*, 545 F.3d at 314-15, including those based on "judicial economy," *Apple*, 979 F.3d at 1343.  Here, judicial economy strongly favors transfer, which would allow for meaningful coordination with *YMTC 1/2*.  A single court would get up to speed on the accused Micron products and 3D NAND and DRAM technology.  The parties would also coordinate discovery and motion practice, thereby reducing the overall briefing burden and preventing inconsistent rulings on claim construction, *Daubert* motions, and disputes over jury instructions and motions in limine.  By contrast, keeping the case here does not aid efficiency.  As of this motion's filing, the parties have not exchanged initial disclosures, YMTC only just served its preliminary infringement contentions, the parties have not started discovery, and the Court has not decided any motion.  *See, e.g., SQIP, LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447, 456 (E.D. Tex. 2024) (nothing suggests "transfer would be inefficient" when "[the] case is at an early stage"); *Apple*, 979 F.3d at 1343 (error to deny transfer based on post-transfer-motion actions).

### b.    The Public-Interest Factors Favor Transfer

#### (i)    Court Congestion Is Neutral Because YMTC Represented It Is Not Engaged In Product Competition

The court-congestion factor considers "the speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347. The "Federal Circuit has instructed that court congestion cannot weigh against transfer in a patent case where an entity like [YMTC] is 'not engaged in product competition in the marketplace.'" *S.M.R. Innovations LTD v. Apple Inc.*, 756 F. Supp. 3d 453, 466 (W.D. Tex. 2024) (quoting *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023)). YMTC has represented that it does not sell products in the U.S. *See* Lang Decl., Ex. 42 (*YMTC 1/2*, Dkt. 53 at 1, 3 n.4). Thus, the moderate average time-to-trial difference between the two districts (approximately 29 months in the Northern District of California compared to approximately 25 months here, *see* Lang Decl., Exs. 21, 22) is irrelevant. Indeed, even if this Court weighed the time to trial against transfer, the factor still could not overcome other factors favoring transfer. Because courts recognize time-to-trial as "the most speculative" factor, for which "case-disposition statistics may not always tell the whole story," "the speed of the transferee district court should not alone outweigh … other factors" when, as here, "several relevant factors weigh in favor of transfer and others are neutral." *Genentech*, 566 F.3d at 1347.

#### (ii)    Local Interest Strongly Favors Transfer

The "localized interests" factor concerns both the parties' "connections to each forum writ large" and the "significant connections between a particular venue and the events that gave rise to a suit.'" *Apple*, 979 F.3d at 1345 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). This factor "weighs heavily in favor of" transfer because this District lacks "any meaningful connection or relationship with the circumstances," whereas both sides have substantial presences in the Northern District of California. *Volkswagen I*, 371 F.3d at 206.

19

Specifically, Micron, Avnet, and YMTC all have offices in the Northern District of California—including YMTC's only U.S. office—and underlying research, design, and development of certain accused products occurred in San Jose. *See In re Samsung Elecs. Co.,* 2 F.4th 1371, 1380 (Fed. Cir. 2021) (factor favored transfer because most underlying research, design, and development of the accused products centered on activity within the transferee venue); *see In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (venue had "a strong local interest in this matter because the research, development, and operation of the accused technology took place there"). In contrast, YMTC and Micron have no presence in this District. No witnesses will come from this District. And YMTC does not allege that any specific infringing activity occurred within this District. *See e.g.* Compl. ¶ 103 (alleging *nationwide* sales and advertising); *Samsung*, 2 F.4th at 1380 ("The fact that infringement is alleged in the [Eastern] District of Texas gives [this District] no more of a local interest than the Northern District of California or any other venue").

### (iii)    Familiarity with Law and Conflicts of Law Are Neutral

Both districts understand the patent laws that govern this case and both utilize local patent rules to manage those cases. Moreover, YMTC asserts no state-law claims or any conflicts-of-law or foreign-law issues. These factors therefore are neutral.

## V.    CONCLUSION

The Court should sever and stay the remaining claims against Micron Texas (or dismiss them based on Micron's pending venue motion), dismiss under Rule 12(b)(6) the six of those claims that assert patents that issued before Micron Texas's dissolution (if those claims are not dismissed based on Micron's pending venue motion), and transfer the claims against Micron and Avnet to the Northern District of California (or dismiss the claims against Micron based on its pending venue motion).

Dated: February 10, 2026

Respectfully submitted,

*/s/ G. Blake Thompson*

**G. Blake Thompson**
State Bar No. 24042033
Blake@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 East Line Street, Suite 304
Tyler, TX 75702
Tel: (903) 657-8540

Jared Bobrow (CA State Bar No. 133712)
Jason Lang (CA State Bar No. 255642)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
Fax: (650) 614-7401
jbobrow@orrick.com
jlang@orrick.com

Sarah K. Mullins (CA State Bar No. 324558)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-4572
Fax: (631) 790-4932
sarahmullins@orrick.com

***Attorneys for Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., Micron Technology Texas, LLC, and Avnet, Inc.***

21

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 10, 2026 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5, and Defendants served a true and correct copy of the foregoing document on Plaintiff's counsel of record by electronic mail.

*/s/ G. Blake Thompson*
**G. Blake Thompson**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), I hereby certify that, on February 4, 2026, counsel for Defendants, Jared Bobrow, Sarah K. Mullins, and me, met and conferred via telephone with counsel for Plaintiff, Yimeng Dou and Yanan Zhao, on this Motion. Counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion. The parties are thus at an impasse.

*/s/ G. Blake Thompson*
**G. Blake Thompson**

22